Your Missouri Courts

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print

GrantedPublicAccess Logoff PORTIAJBRITT

23SL-CC00013 - JUAN MITCHELL V ST. LOUIS COUNTY ET AL (E-CASE)

Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution

FV File Viewer

Click here to eFile on Case
Click here to Respond to Selected Documents

Sort Date Entries: Descending / Ascending

Display Options: All Entries

**01/11/2023** **Note to Clerk eFiling**
**Filed By:** MARK J PEDROLI

**Amended Motion/Petition Filed**
Notice of Amended Petition or in the alternative Motion for Leave; Exhibit A - Amended Petition.
**Filed By:** MARK J PEDROLI
**On Behalf Of:** JUAN MITCHELL

**12/25/2022** **Filing Info Sheet eFiling**
**Filed By:** MARK J PEDROLI

**Note to Clerk eFiling**
**Filed By:** MARK J PEDROLI

**Pet Filed in Circuit Ct**
Petition.
**Filed By:** MARK J PEDROLI
**On Behalf Of:** JUAN MITCHELL

**Judge Assigned**
DIV 17

Case.net Version 5.14.62 Return to Top of Page Released 02/03/2023

23SL-CC00013
Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

JUAN MITCHELL , Individually and on behalf of JOVON MITCHELL deceased,

Plaintiff,

v.

SAINT LOUIS COUNTY, MISSOURI,

Serve: County Executive Sam Page
41 South Central Avenue, 9th
Clayton, Missouri 63105,

EMILY DOUCETTE,

Serve: Department of Public Health
6121 North Hanley Road
Berkeley, MO 63134,

RAUL BANASCO,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

C.O. McMAHAN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

TODD PARKER, PA,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

CONNIE L. HEITMAN, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

Case No.

Division

JURY TRIAL DEMANDED

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

VICKI REYNOLDS, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

SHYLA HOWARD, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

KATIE CORA, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105

JOHN and JANE DOES 1-10

Serve: **Hold for Service**

Defendants.

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff, Juan Mitchell, Individually and on behalf of Jovon Mitchell, deceased, and for her Complaint against the Defendants who are sued in their individual and official capacities states the following:

## STATEMENT OF CASE

1. Jovon Mitchell was a detainee at Defendant St. Louis County's Buzz Westfall Justice Center. On December 23, 2019, Mr. Mitchell began complaining of a headache. Mr. Mitchell continued to report having headaches and his condition steadily worsened until December 24, 2019, by which point Mr. Mitchell was too ill to take visitors he had previously been excited

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

to see. Despite Mr. Mitchell's repeated complaints about his condition and symptoms to St. Louis County correctional officers and medical staff and the obvious and ongoing deterioration of his physical condition, St. Louis County and its employees failed to provide Mr. Mitchell with adequate medical care and treatment. Instead, Mr. Mitchell's serious medical condition, obvious to laypersons around him, was allowed to worsen significantly until he was finally brought to the infirmary on December 25, 2019.

2. Jovon Mitchell's death was neither quick and painless nor unforeseeable and unexpected. Instead, over a period of 48-hours, Mr. Mitchell suffered from serious, escalating, and obvious distress that prevented even standing for the requested standing health counts, demonstrating the jail's repeated violations of policy and a custom of ignoring inmates who are too sick to even stand. And, it was obvious and/or should have been obvious to everyone in the Justice Center – inmates, correctional officers, and health care staff – that Mr. Mitchell was in extreme distress. On December 24 and 25, 2019, in violation of their own policies and after four inmates had died in the jail during the prior twelve months, corrections officers stopped requiring Mr. Mitchell to stand for the mandatory "sign of life" health checks.

3. In this atmosphere of total institutional decay and disfunction, jail officers and staff, clearly aware of Mr. Mitchells' serious and urgent medical needs and deteriorating health and physical condition, failed to make any efforts to provide him with even the most basic standard of humane treatment and compassionate medical care. Instead, correctional officers, including the above-named Defendants, acknowledged, but never sought care or treatment for Mr. Mitchell's worsening illness. Moreover, despite Mr. Mitchell's requests for medical attention, no doctors were called, nor was he sent to the jail infirmary or a hospital. Finally, Defendant St. Louis County was well-aware of the serious and obvious deficiencies with respect to its jail policies and training

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

of jail staff, including policies and training regarding the provision of health services and medical care to its detainees. Accordingly, Plaintiff Juan Mitchell, Individually and on behalf of Jovon Mitchell (decedent), seeks judgement against the above-named Defendants, in their individual capacities, for violations of Mr. Mitchell's Constitutional rights to receive adequate medical care under the Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983 and 1988, as Missouri state law, including claims for negligence, negligence per se, and wrongful death. Further, Plaintiff Juan Mitchell, individually and on behalf of Jovon Mitchell (decedent), brings claims against Defendant Saint Louis County, itself, under theories of municipal liability ("*Monell*" liability), for maintaining unconstitutional policies, practices, and customs as well as for failures to train, supervise, and/or discipline its employees.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the parties.

5. Venue is proper to this Court, pursuant to Mo. Rev. Stat. § 105.055, which provides that "[a] civil action commenced pursuant to this subsection may be brought in the circuit court for the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides" and the violations alleged herein occurred within the geographical boundaries of St. Louis County, Missouri.

## PARTIES

6. Plaintiff Juan Mitchell (hereinafter "Plaintiff Mitchell") is and was at all times relevant herein a citizen of the United States of America and was a resident of the State of Missouri. He is currently residing in Florida. Further, Plaintiff Juan Mitchell is the brother of Jovon Mitchell (hereinafter "Mr. Juan Mitchell) and therefore the appropriate party to bring action on his behalf.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

7. Defendant St. Louis County, Missouri (hereinafter "Defendant St. Louis County") is a body politic, municipal corporation, and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and state law. Defendant St. Louis County operates the Buzz Westfall Justice Center (hereinafter "Justice Center") through its Department of Justice Services and provides healthcare services to inmates of the Justice Center through the Corrections Medicine Program operated by the St. Louis County Department of Public Health.

8. Defendant Emily Doucette (hereinafter "Defendant Doucette") is and was, at all times relevant hereto, a citizen of the United States and the acting Director and/or Co-Director of Defendant St. Louis County's Department of Public Health. On information and belief, Defendant Doucette, as the acting Director and/or Co-Director of Defendant St. Louis County's Department of Public Health, held final policymaking authority for the operations of the Corrections Medicine Program and was responsible for the supervision of the provision of health and medical care to inmates in the Justice Center, including but not limited to training and supervision of staff and the implementation and enforcement of health policies and procedures at the Justice Center. For purposes of Plaintiff's federal claims, Defendant Doucette is named in her individual capacity.

9. Defendant Raul Banasco (hereinafter "Defendant Banasco") is and was at all time relevant hereto a citizen of the United States and the Director of St. Louis County's Justice Services and held final policy making authority for the operations of the jail. and was responsible for the supervision of corrections officer and the implementation of policies in the Justice Center, including but not limited to training and supervision of staff and the implementation and enforcement of policies and procedures at the Justice Center. For purposes of Plaintiff's federal claims, Defendant Banasco is named in his individual capacity

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

10. Defendant (First Name Unknown) McMahan (hereinafter “Defendant McMahan”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of corrections officer. At all times relevant hereto, Defendant McMahan was acting under color of state law and authority of his position with Defendant St. Louis County. For purposes of Plaintiff’s federal claims, Defendant McMahan is named in his individual capacity.

11. Defendant Todd Parker (hereinafter “Defendant Parker”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Physician Assistant. At all times relevant hereto, Defendant Parker was acting under color of state law and authority of his position with Defendant St. Louis County. For purposes of Plaintiff’s federal claims, Defendant Parker is named in his individual capacity.

12. Defendant Connie L. Heitman (hereinafter “Defendant Heitman”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Heitman was acting under color of state law and authority of her position with Defendant St. Louis County. For purposes of Plaintiff’s federal claims, Defendant Heitman is named in her individual capacity.

13. Defendant Vicki Reynolds (hereinafter “Defendant Reynolds”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Reynolds was acting under color of state law and authority of her position with

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

Defendant St. Louis County. For purposes of Plaintiff's federal claims, Defendant Reynolds is named in her individual capacity.

14. Defendant Shyla Howard (hereinafter "Defendant Howard") is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Howard was acting under color of state law and authority of her position with Defendant St. Louis County. For purposes of Plaintiff's federal claims, Defendant Howard is named in her individual capacity.

15. Defendant Katie Cora (hereinafter "Defendant Cora") is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Cora was acting under color of state law and authority of her position with Defendant St. Louis County. For purposes of Plaintiff's federal claims, Defendant Cora is named in her individual capacity.

16. Defendants John and Jane Does' are Corrections Officers, Corrections Medicine staff and/or third-party medical providers and were, at all times relevant hereto, employed or contracted by Defendant St. Louis County at its Justice Center, holding supervisory ranks and/or titles and/or positions of correctional officers and supervisors and health care staff, including corrections officers and medical providers. At present, these individuals have yet to be identified by names but were, at all times relevant hereto, acting under color of state law and authority of their positions with Defendant St. Louis County. For purposes of Plaintiff's federal claims, John and Jane Doe Correctional Officers, Corrections Medicine and third-party medical providers are named in their individual capacities. Plaintiff's information and belief regarding these individuals

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

is based upon redacted reports and records obtained during Plaintiff's pre-litigation investigation. The unredacted versions of the reports and other wholly undisclosed records are presently, exclusively, and uniquely in the custody and control of Defendant St. Louis pending discovery.

**ALLEGATIONS COMMON TO ALL COUNTS**

17. At the time of his pretrial detention, Mr. Mitchell was an otherwise healthy male.

18. On information and belief, during his pretrial detention, Mr. Mitchell has no history of malingering and was a cooperative and compliant inmate.

19. On or about December 23, 2019, Mr. Mitchell began to suffer from a headache and began vomiting.

20. On or about December 24, 2019, Mr. Mitchell woke up and told his cellmate that his head was hurting.

21. On his way to breakfast, Mr. Mitchell's cellmate informed a correctional officer that Mr. Mitchell was not well and requested a sick slip form on Mr. Mitchell's behalf.

22. After Mr. Mitchell's roommate returned from breakfast, Mitchell was lying on a mattress he placed on the floor.

23. Shortly after the roommate returned from breakfast, Mr. Mitchell vomited again and told his roommate that his head was hurting badly, he felt like the room was spinning, and he was sick to his stomach.

24. Mr. Mitchell continued to vomit several more times that day.

25. Mr. Mitchell also had extreme difficulty standing and walking.

26. Mr. Mitchell's brother (Plaintiff) and his nephew came to visit him at around 12:20 p.m., on that same day of December 24, 2019, but as noted by C.O. Aaron Mitchell in the IJMS log, Mitchell was "unable to get up."

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

27. Plaintiff, Mr. Mitchel's brother was told that Mr. Mitchell couldn't see him because he was in the infirmary.

28. However, despite corrections personnel's awareness of Mr. Mitchell's symptoms and despite the statements to Mr. Mitchell's brother, Mr. Mitchell had not received any medical treatment before this point, nor had he been taken to the infirmary.

29. That same morning, of December 24, 2019, another detainee, not Mr. Mitchell's roommate, observed Mr. Mitchell stumbling about his room and falling over trying to get himself dressed.

30. After observing Mr. Mitchell in this condition, this detainee told a corrections officer that Mr. Mitchell needed assistance, but the correctional officer told this detainee to "mind his own business" and return to his cell.

31. By around 12:00 p.m., on December 24th, 2019, a third detainee observed that Mr. Mitchell couldn't walk and reported this fact to a corrections officer.

32. Mr. Mitchell did not eat breakfast or dinner on December 24, 2019.

33. Despite reporting symptoms of headache, vomiting, nausea, and dizziness, all morning on December 24th, at his first encounter with a corrections medicine practical nurse Shatia Reece, on or around 1:29 p.m., Mr. Mitchell was not provided with any treatment for his headache, nor was his headache noted in the medical record.

34. However, practical nurse Shatia Reece did note vomiting "since yesterday" (December 23, 2019), nausea, and dizziness, and contacted Defendant Parker by phone to report Mr. Mitchell's condition.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

35. Defendant Parker ordered 12.5 mg of Promethazine and to "[O]btain vital signs q shift for 2 days. Pt to increase water intake. Nursing should report any abnormalities with vitals or new pt complaints to the on call medical provider".

36. On December 24, 2019, Mr. Mitchell was not, at any time, taken to the infirmary nor examined by a licensed physician and/or medical doctor.

37. During an informal count, at approximately 2:20 pm on December 24, 2019, Mr. Mitchell stated that he was ill and unable to stand.

38. Mr. Mitchell was not required to stand at that time, in direct contradiction with jail policies.

39. At 4:45 p.m., Mr. Mitchell was again unable to stand for the formal count.

40. Mr. Mitchell's inability to stand was not recorded in jail records nor did the Doe correctional officers report this fact their supervisors.

41. Per orders, Mr. Mitchell's vital were taken at or around 6:41 p.m. and again at or around 9:55p.m.

42. During these vital checks, Mr. Mitchell reported vomiting another once or two times during Nurse Gosche's shift and he was given Tylenol in response to a body temperature of 99.5° F

43. On information and belief, Nurse Gosche told Defendant Parker that Mr. Mitchell had vomited several additional times.

44. During the evening count at 10:15 p.m. on December 24, 2019, Mr. Mitchell was again unable to stand for the standing count, but correctional officers failed to report this to their supervisors.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

45. During the night of December 24, 2019, Mr. Mitchell's cellmate noted that Mr. Mitchell had complained throughout the night regarding hypersensitivity to noise and light causing increased the pain in his head.

46. Mr. Mitchell's roommate reported that, late during the night on December 24, 2019, Mr. Mitchell asked his roommate to turn off the lights, but the lights were already off and the cell was dark.

47. On or around 4:05 a.m. on December 25, 2019 Mr. Mitchell or his cellmate pressed the emergency call button.

48. Mr. Mitchell told unit control he had the worst throbbing headache of his life and was still dizzy and unable to walk.

49. Mr. Mitchell's roommate reported that Mr. Mitchell had stated that he felt like he would pass out, was completely unable to speak at times or slurring his speech when he could talk, was unsteady and stumbling, and pleaded to be taken to the hospital.

50. On or around 4:18 a.m., Defendant Heitman reported to Mr. Mitchell's unit, at a table outside his cell and accompanied by two corrections officers, in response to the emergency call button.

51. Defendant Heitman recorded Mr. Mitchell's symptoms as "bad headache" "throbbing in the forehead", nausea, vomiting, difficulty standing, and complaints of inability to eat all day.

52. Defendant Heitman did not transfer Mr. Mitchell to the infirmary nor, upon information and belief contact a medical provider or Defendant Parker, but instead merely gave Mr. Mitchell Tylenol.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

53. noted that Mr. Mitchell's gate was unsteady during Defendant Heitman's examination and visit.

54. Despite Defendant Parker's standing order to be contacted if any new symptoms developed, upon information and belief, Defendant Heitman failed to apprise Defendant Parker of Mr. Mitchell's stumbling or unsteady gate.

55. Mr. Mitchell's cellmate tried to provide Defendant Heitman with additional details regarding Mr. Mitchell's condition, including how much he was vomiting and his difficulty standing, walking and speaking, but Defendant Heitman told Mr. Mitchell's cellmate that she "was not talking to him" and refused to have any discussion with him.

56. Mr. Mitchell's cellmate believed that Defendant Heitman was angered about having to treat Mr. Mitchell so early in the morning.

57. During her visit, Defendant Heitman failed to record Mr. Mitchell's blood pressure, even though that was her standing orders, and the policy of Correction Medicine.

58. C.O. Washington, who was present with Defendant Heitman during her visit, described Mr. Mitchell's speech as slurred and noted that Mr. Mitchell was asking to be taken to the infirmary.

59. Despite Mr. Mitchell's symptoms and poor physical condition, Defendant Heitman failed to send Mr. Mitchell to the hospital, to the infirmary and, upon information and belief, failed contact the on-call provider to report the slurred speech, inability to talk, and difficulty walking.

60. A few hours late, at around 6:00 a.m., Mr. Mitchell or his roommate pushed the emergency call button complaining of the same and worsening symptoms and C.O. Washington again contacted Defendant Heitman.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

61. Upon information and belief, based upon jail records, Defendant Heitman told C.O. Washington that Mr. Mitchell would have to wait for and leave the pod to see the diabetic nurse during the morning medication rounds.

62. At 6:50 a.m., jail video shows Mr. Mitchell unable to walk to see the diabetic nurse on his own power and requiring assistance from other inmates in order to leave his pod.

63. Mr. Mitchell is seen on the video holding himself up using the walls, and eventually sliding down the wall onto the floor, no longer able to stand, and then lying in the sallyport for approximately ten minutes.

64. At around 7:00 a.m., Mr. Mitchell was assisted to his feet by inmates and carried to meet nurse, where he waited for approximately fifteen minutes while the nurse dispenses medication to other inmates.

65. On or about 7:15 a.m., Defendant Reynolds assessed Mr. Mitchell and noted in her report even more serious and escalating symptoms of headache, vomiting, "very dry" mouth, lips and tongue, as well as Mr. Mitchell stating that he felt he was going to pass out.

66. Upon information and belief, while Defendant Reynolds contacted Defendant Parker again, Defendant Reynolds took no further action and had Mr. Mitchell returned back to his cell.

67. Despite Mr. Mitchell's medical records showing a serious medical need and his requesting emergency help throughout the night before, Defendant Reynolds admitted that she failed to take any immediate action but instead delayed in order to make sure Mr. Mitchell wasn't faking or malingering.

68. At the 10:30 a.m., on December 25, 2019, during the medication round, Defendant Reynolds noted that Mr. Mitchell had an "unsteady gait."

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

69. Defendant Reynolds noted in her medical records that she talked to Defendant Parker "again" and Mr. Mitchell was be sent to the infirmary.

70. Several additional hours passed between when Defendants Reynolds and Parker determined that Mr. Mitchell needed to be sent to the infirmary and when he was actually transferred to the infirmary.

71. At approximately 12:36 a.m., Mr. Mitchell was told to leave his cell and pod, without assistance, to meet transport to go to the infirmary.

72. Mr. Mitchell stumbled out of the housing unit, staggered as he walked, and had to hold onto the wall.

73. At approximately 12:41 p.m., on December 25, 2019, Mr. Mitchell was taken in a wheelchair to the infirmary.

74. Upon his arrival at the infirmary, Defendant Howard, an infirmary nurse that day, noted that Mr. Mitchell was reporting a throbbing headache, vomiting, denies all cold symptoms, and she observes slurring of his speech, a dry tongue, "lips dry and cracked", and the urinalysis was "indicative of dehydration.".

75. The medical records show that vital signs were not recorded at the 12:41 encounter with Nurse Howard during the infirmary intake.

76. Nurse Howard reported these symptoms and observations to Defendant Parker who ordered orthostatic BP's and suggested Nurse Howard start an I.V. at 150ml/hr for total of 2L if Mr. Mitchell was unable to drink enough or hold it in.

77. Defendant Parker ordered orthostatic blood pressure tests, but according to the medical records, these tests began until 1:16 p.m., continued at 2:15 p.m., 2:18 p.m., and 2:21 p.m.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

and showed a blood pressure that escalated to the highest recording of 155 systolic and diastolic of 91.

78. Defendant Howard did nothing to address the escalating blood pressure or otherwise treat Mr. Mitchell for any of his conditions except perhaps giving him a cup of water.

79. After the 2:21 p.m. orthostatic blood pressure test, Mr. Mitchell was locked up in his cell, and, despite the orders to observe fluid intake or administer an IV, no corrections medicine staff or nurse would observe Mr. Mitchell again until he was found unconscious *three* hours later.

80. That evening, at approximately 4:00 p.m., Defendant McMahan brought dinner to inmates in the infirmary, but Mr. Mitchell was unable to eat his meal. and the meal was collected uneaten about fifteen minutes later.

81. Then at 5:14 p.m., Defendant McMahan completed his tour of the infirmary and observed Mr. Mitchell was laying on the floor, with his head against the door and non-responsive.

82. In fact, after observing Mr. Mitchell unconscious, Defendant McMahan failed to immediate action nor to inform a nurse or medical provider, but instead slowly continued his rounds, spoke with another inmate for approximately 30 seconds, then spent more time at the nursing station.

83. The jail's internal affairs report stated that Defendant McMahan "responded without a sense of urgency to a medical emergency and falsified his report to reflect that he did."

84. When Defendant Cora went to Mr. Mitchell's cell to check on him, he was not breathing and showed an oxygen saturation level as low as 8%.

85. Defendant Cora called a "Code 1"

86. Defendant Cora did not initiate CPR.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

87. Defendant Cora did not immediately call or direct someone to call 911 or Clayton EMS.

88. Instead, approximately five minutes elapsed between the time Defendant Cora called a "Code 1" and someone at the jail called 911.

89. Clayton EMS or 911 should have been called immediately upon discovering Mr. Mitchell in his condition.

90. Defendant Cora reported that she had to place Mr. Mitchell on his side due to all the secretions coming from his mouth and nose.

91. When Defendant Cora attempted to use the infirmary's suction equipment, it malfunctioned.

92. When Defendant Cora attempted to use a rebreather and/or with oxygen tank, that equipment either failed or the oxygen tank(s) were empty.

93. St. Louis County Justice Center and Corrections Medicine failed to perform functionality tests on either piece of equipment.

94. Several additional minutes passed before additional nurses arrived with a functional oxygen tank for Mr. Mitchell.

95. On or about near 5:25 p.m. Clayton EMS arrived and, according to medical records, Mr. Mitchell wasn't breathing and had no pulse when they found him in the jail infirmary.

96. Prior to the arrival of Clayton EMS, no corrections medicine staff attempted to perform mouth-to-mouth resuscitation or chest compressions on Mr. Mitchell.

97. Immediately upon Clayton EMS's arrival, CPR was finally initiated.

98. After 3 to 4 round of CPR, Clayton EMS was able to get a pulse re-started, but it was too late and Mr. Mitchell would later be declared brain dead at the hospital.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

99. Upon arrival at St. Mary's hospital, Mr. Mitchell was "unresponsive to light" and had "no response to painful stimuli".

100. At approximately 6:11 p.m., Mr. Mitchell went into cardiac arrest prior to be taken to an operating room.

101. Upon completion of emergency surgery, Mr. Mitchell was diagnosed with cardiac arrest, hypothermia, lactic acidosis, tachycardia, and a brain mass.

102. A 7:00 p.m. brain scan indicates that there was an approximately 3 cm mass of blood in Mr. Mitchell's head.

103. At 8:21 p.m., December 25, 2019, Mr. Mitchell was taken via EMS to St. Louis University Hospital.

104. At 7:43 a.m., on Friday December 27th, 2019, Mr. Mitchell was official pronounced brain dead at SLU Hospital.

105. St. Louis County would issue a series of press releases about Mr. Mitchell's hospitalizations and death, which concealed key facts from Mr. Mitchell's family and the St. Lous public, including employees ignoring his serious medical condition, his pleas for help, his inability to walk and talk, the repeated failures to make Mr. Mitchell stand for the sign-of-life checks, the multiple lifesaving emergency equipment failures, the delays in infirmary emergency response, and the falsification of records by a corrections officer.

106. Because Mr. Mitchell was the fifth death in a calendar year, in a year of significant and serious public scrutiny of the jail by newspapers and the public at large, St. Louis County hid all of these serious failures and internal accusations of wrongdoing.

107. St. Louis County press releases congratulated correctional staff and St. Louis County and its officials for the good job they did in treating Mr. Mitchell.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

108. On December 26, 2019, Justice Service's issued a press release, stating that a "corrections officer observed the person becoming unconscious" and "immediately involved the jail's medical staff."

109. These statements were untrue and contradicted by Justice Services' Internal Affairs investigative report, which accused the corrections officer of falsifying records. However despite this, the press release was never corrected or updated with accurate information.

110. Indeed, three nurses, Defendants Heitman, Reynolds, and Howard would report and/or observe vomiting, slurred speech, problems walking and unsteady gate over a period of thirteen hours without taking any emergency action including calling 911, however, this fact remained concealed from the Mitchell family and the general public.

111. St. Louis County also concealed the fact that correctional officers continued to violate the standing count policies, even after these policy violations were implicated in previous deaths at the jail, including previous deaths in the last twelve months.

112. Despite Defendant Parker stating that, if Mr. Mitchell is having difficulties with ambulation, he might need to go to the hospital, Mr. Mitchell was not sent to the hospital even after several nursing reports provided to Defendant Parker that Mr. Mitchell was indeed having serious trouble ambulating.

113. The press release further specifically stated: "While in custody, the patient received regular medical care."

114. Justice Services Policy CM-21 required that all detainees housed for a period longer than twelve months shall be scheduled for an annual health examination.

115. Mr. Mitchell was housed since October 2016 yet never saw a provider.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

116. Mr. Mitchell was housed since October 2016 yet never saw a provider for an annual health examination.

117. Therefore, St. Louis County also violated Justice Services Policy CM-21 by not administering annual physicals to Mr. Mitchell.

118. Upon information and belief, St. Louis County Corrections Medicine had staffing problems between December 24 and 25, 2019.

119. Upon information and belief, Defendants knew or should have known about the staffing problems.

120. Upon information and belief, because of the known problem with less than adequate Corrections medicine staff on December 24 and 25, 2019 Defendants should have known they didn't have adequate resources to observe and monitor someone with Mr. Mitchell's serious symptoms and should have sent him to this hospital where Mr. Mitchell could have received proper monitoring and observation.

121. Defendants were aware that Mr. Mitchell was suffering from a serious medical condition and in need of medical attention.

122. Defendants were aware that even laypersons in the jail were aware of Mr. Mitchell's need for immediate health treatment.

123. Even though corrections medical staff knew and/or should have known of Mr. Mitchell's serious need for medical attention, they failed to provide him with adequate and timely medical care, including but not limited to having him transferred to the infirmary, to the hospital, and/or contacting a medical provider.

124. On information and belief, Justice Services' staff, including the individually named Defendant correctional officers and supervisory staff and/or Defendants John and Jane Doe

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

Correctional Officers and Staff, knew and/or should have known that, Mr. Mitchell made multiple requests for medical care and/or attention, including but not limited to being taken to the infirmary, hospital, and/or to be seen by a physician.

125. Based on Mr. Mitchell's condition and the Defendants' awareness of it, Defendants were aware that the medical care Mr. Mitchell was receiving was inadequate.

126. Defendants, acting individually and in concert with one another, attempted to conceal their negligence and deliberate indifference toward Mr. Mitchell demonstrating an awareness of the inadequacies present in his treatment.

127. Defendants individually and in concert with one another intentionally, willfully, maliciously, and while acting under the color of state law, showed a deliberate indifference to Mr. Mitchell's medical needs, in that they had actual knowledge of his poor health, obvious to a layperson, and did not provide appropriate medical treatment or allow him contact with anyone who could provide proper and/or adequate medical treatment.

128. Defendants, individually and in concert with one another, employed policies and procedures promulgated by them and Saint Louis County, Missouri that insufficiently provided medical assessment, treatment, and ongoing care to Mr. Mitchell and violated his civil rights.

129. Defendant Saint Louis County enacted inadequate policies and did not train, supervise and discipline its employees to ensure existing policies were followed to benefit the welfare of Mr. Mitchell. This created an environment in which Mr. Mitchell's civil rights were deliberately violated and ignored.

130. Justice Services' staff and correctional officers routinely ignored the "sign of life" standing count policy, permitting detainees to not stand for the count and from notating that in the IJMS records.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

131. Corrections Medicine health care staff and nurses regularly and routinely failed to check and/or record vital signs including but not limited to blood pressure and thereby preventing nursing staff and physicians from providing proper oversight and supervision.

132. Justice Services' health care staff and nurses regularly and routinely failed to follow the standing orders of the authorizing physicians when examining and/or treating inmates.

133. On information and belief, Justice Services, Corrections Medicine and its staff, and its officials failed and/or refused to properly discipline offending staff members for their failures to follow the jail policies, procedures and standing orders of the authorizing physicians when examining and/or treating inmates.

134. On information and belief, Justice Services stated policy was to check on inmates and their health repeatedly throughout the day, including key tours and multiple "sign of life" checks conducted at multiple scheduled intervals throughout the day and night in which an inmate is forced to stand so that their *ability* to stand is confirmed.

135. Justice Services' stated policy requiring multiple, effective key tour checks, to observe inmates, was regularly and routinely violated by correctional officers and staff to such pervasive extent as to become the operative practice and custom of the jail.

136. On information and belief, Justice Services' training policies regarding the required key tour checks was inadequate and/or ineffective, to the extent that a significant portion of correctional officers and staff were unaware that such a policy even existed.

137. On information and belief, Justice Services, its officials, and its policymakers knew and/or should have known that correctional officers and staff regularly and routinely failed to perform the required standing "sign of life" checks.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

138. Defendant Banasco, Doucette, and/or the final policy makers for the jail and corrections medicine knew and/or should have known that correctional officers and staff regularly and routinely failed to perform the required multiple, standing "sign of life" checks.

139. Justice Services, its officials, and its policymakers failed to adequately and properly discipline offending staff members for their failures to perform the multiple, standing "sign of life" checks.

140. Defendants acted individually and in concert with one another to deprive Mr. Mitchell of appropriate medical care, to which he is entitled under the Eighth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

141. As a direct and proximate cause of Defendants' negligence and deliberate indifference, Plaintiff suffered a loss of his brother.

142. As a direct and proximate result of the actions of all Defendants described above and pursuant to § 537.090 RSMo., Plaintiff has damages as follows: damages that decedent Mr. Mitchell suffered between the time of his incarceration to the time of his death, and for the recovery of which the decedent might have maintained an action had death not ensued; pecuniary loss suffered by reason of the death of Mr. Mitchell; funeral expenses; and a reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, support and brotherly love of which the Plaintiff has been deprived by reason of the death of Mr. Mitchell.

143. All of the aforementioned actions demonstrate that Defendants' actions were reckless and/or callously indifferent to Mr. Mitchell's rights so as to justify consideration by the trier of fact of aggravating circumstances in determining the amount of damages to be allowed.

144. Plaintiff is entitled to compensation for violations of Mr. Mitchell's constitutional rights that all Defendants inflicted upon him, including, but not limited to all damages allowable

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

for wrongful death pursuant to § 537.080 RSMo; pain and suffering before death; attorney's fees; and punitive damages.

**COUNT I**

**Failure to Provide Adequate Medical Care, Cognizable Under 42 U.S.C. § 1983**

***Against Defendants Doucette, Banasco, McMahan, Parker, Heitman, Reynolds, Howard, Cora, and Does 1-10***

145. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

146. Mr. Mitchell was experiencing objectively serious health symptoms in the days leading to his death

147. Defendants were aware of Mr. Mitchell's condition beginning on or about December 23, 2019 and continuing through December 25, 2019.

148. Defendants were aware of the seriousness and rapidly escalating nature of Mr. Mitchell's health complaints, and deliberately disregarded them, as demonstrated, *inter alia*, including but not limited to Mr. Mitchell's reports of his symptoms and requests for medical care, reports from other inmate/detainee's regarding Mr. Mitchell's medical condition and need for care, direct observations by correctional officers and jail medical staff, and Mr. Mitchell not being able to and required to stand for counts, not being able to stand at all, not being able to walk, and not being able to talk or talking with slurred speech.

149. The nursing visits did not amount to appropriate care for Mr. Mitchell as his condition continued to decline quickly and his symptoms demonstrated severe neurological and other health distress.

150. Defendants' deliberate denial of appropriate medical care demonstrates deliberate indifference towards Mr. Mitchell's condition.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

151. Defendants knew and/or should have known that Mr. Mitchell was at substantial risk of serious injury to his health, including the possibility of death, from his medical condition, but disregarded that risk by intentionally refusing and/or failing to take any reasonable measures to treat his medical conditions and/or address his medical needs.

152. Defendants' admission of Mr. Mitchell to the infirmary suggests, albeit late, an acknowledgment of the severity of his symptoms. However, their failure to treat him adequately, sooner, and also while in the infirmary suggests deliberate indifference towards Mr. Mitchell's health.

153. Defendants should have been aware that to deny Mr. Mitchell adequate medical care for his serious condition was to deny Mr. Mitchell his Constitutional rights.

154. In committing the acts alleged herein, Defendants acted willfully, recklessly, maliciously, and with deliberate indifference to Mr. Mitchell and his serious medical needs and need for medical care.

155. Defendants were acting under color of State law when they denied Mr. Mitchell his Constitutional right to adequate medical care.

156. As a direct and proximate result of the acts and omissions of Defendants, while acting alone and/or in concert with others and with deliberate indifference to Mr. Mitchell's rights and serious medical needs, Mr. Mitchell suffered severe and devastating damages and injuries, prior to his death, including but not limited to intense physical pain, the inability to walk, talk, the inability to get relief or assistance, suffering, severe anxiety, fear, mental anguish and ultimately death.

157. As the direct and proximate result of the acts and omissions of Defendants, while acting alone, in concert with others, and with deliberate indifference to Mr. Mitchell's rights and

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

serious medical needs, Plaintiff Juan Mitchell has been deprived of Mr. Mitchell's valuable services, companionship, comfort, consortium, support, brotherly love, and affection.

158. The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Mr. Mitchell's constitutional rights, privileges and immunities, thereby justifying award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future.

159. As a result of Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorney's fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Juan Mitchell respectfully prays this Honorable Court enter judgement in his favor against each of the individually-named Defendants; award him compensatory and punitive damages award him reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper.

**COUNT II**
**Failure to Train, Supervise, and Discipline, Cognizable Under 42 U.S.C. § 1983**
***Against Defendants St. Louis County, Doucette, Parker and Banasco***

160. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

161. Mr. Mitchell's symptoms were of sufficient severity that Mr. Mitchell should have received more appropriate medical care for his objectively serious medical condition.

162. Defendants were aware of the severity of Mr. Mitchell's health condition.

163. Defendants knew or should have known that failure to provide adequate medical care to Mr. Mitchell was a violation of his constitutional right.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

164. Defendant Saint Louis County oversaw policies implemented by Saint Louis County Public Health Department's Corrections Medicine policies and procedures for the Justice Center.

165. Upon information and belief, Defendant Doucette was responsible for the policies and procedures implemented by Saint Louis County Public Health Department's Corrections Medicine for the Justice Center.

166. Defendant Saint Louis County oversaw policies implemented by Saint Louis County Justice Services for the Justice Center.

167. Defendant Banasco was responsible for the policies and procedures implemented by Saint Louis County Justice Services for the Justice Center

168. Defendants were negligent in their supervision of Saint Louis County Public Health Department's Corrections Medicine and Justice Services policies and procedures for the Justice Center.

169. More specifically, Defendant St. Louis County, Doucette, Parker's and Banasco's inadequate policies, procedures, custom, practices and actions – as well as their inadequate training, supervision and discipline permitted failures, including but not limited to: failures to send patients presenting with severe symptoms to the hospital and infirmary, failures to train, supervise and discipline personnel for violating standing count policies and policies requiring the taking of vital signs and blood pressure, failures to implement policies and/or supervise personnel responsible for checking and monitoring the functionality of life-saving emergency equipment in the infirmary, which , as a result, malfunctioned or otherwise did not work when Mr. Mitchell needed them, failed to train personnel related to how and when to perform CPR on patients in Mr. Mitchell's condition, failed to ensure that professional medical judgment or care would be ordered

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

by outside treating physicians in situations like Mr. Mitchells', delays or non-responses to noted urgent conditions, delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations, failures to provide continuity of care by not documenting clinical observations, not properly diagnosing, and not providing adequate treatment; failures to provide pretrial detainees with qualified medical opinions rendered by on-site or off-site physicians; failures to deal with staffing shortages to ensure that patients receive the proper observation commensurate with their symptoms.

170. The facts alleged herein demonstrate corrections personnel working individually and in concert to conceal their violation of Mr. Mitchell's civil rights. These instances demonstrate an environment in which policies and procedures were routinely violated without regard for the health and safety of inmates.

171. Upon information and belief, Defendants St. Louis County, Doucette, Parker and Banasco were responsible for providing adequate training and supervision to ensure that such blatant, reckless, and dangerous indifference to jail and correction medicine policy did not occur.

172. Additionally, there are two recorded accounts of corrections personnel rejecting information about Mr. Mitchell's condition from other inmates.

173. This suggests an environment in which corrections personnel were willfully unaware of the severity of Mr. Mitchell's medical needs.

174. Defendant Saint Louis County's custom and/or practice to ignore obvious signs of a severe medical condition and not provide appropriate, adequate medical treatment deprived Mr. Mitchell of his constitutional rights.

175. Defendants Saint Louis County, Doucette, Parker, and Banasco's failure to adequately provide training and supervision to ensure that inmates received adequate medical

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

attention was a direct and proximate cause of Mr. Mitchell's deprivation of civil rights and death and demonstrates a deliberate indifference to Mr. Mitchell.

176. Defendants Saint Louis County, Doucette, Parker and Banasco's failure to supervise Justice Center and Corrections Medicine staff constituted a tacit authorization of the offensive acts.

177. Despite having knowledge of Mr. Mitchell's need for additional medical care, Defendants acted under color of State law to provide medical care that violated Mr. Mitchell's rights under the Due Process clause of the Fourteenth Amendment to the Constitution pursuant to 42 U.S.C § 1983. Defendants showed deliberate indifference to Mr. Mitchell's condition and treatment.

178. As a direct and proximate cause of the Defendants' negligent violation of Mr. Mitchell's civil rights, Mr. Mitchell suffered damages to which he is entitled under 42 U.S.C. § 1983.

179. The conduct of the Defendants was willful, malicious, oppressive, and reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff Juan Mitchell respectfully prays this Honorable Court enter judgement in his favor against each of the individually named Defendants; award him compensatory and punitive damages award him reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper.

**COUNT III**

**Negligence *Per Se* - Violation of R.S.Mo. § 221.120**

***Against Defendants St. Louis County, Banasco, Doucette, McMahan, Parker, Heitman, Howard, Reynolds, Cora, and Does 1-15***

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

180. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

181. Mr. Mitchell had objectively serious medical symptoms which required advanced medical treatment.

182. Defendants should have been aware that failing to provide Mr. Mitchell with adequate medical care for his symptoms was a violation of Missouri State law as written in § 221.120 RSMo.

183. The Revised Statutes of the State of Missouri provided in Section 221.120.1 that, "[i]f any prisoner confined to the county jail is sick and in the judgement of the jailer, requires the attention of a physician, dental care or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner."

184. Defendants failed to provide the necessary care to Mr. Mitchell, violating § 221.120 RSMo.

185. Defendants Saint Louis County and Doucette implicitly or explicitly adopted policies that allowed corrections personnel to provide negligent care to inmates such as Mr. Mitchell, in violation of § 221.120 RSMo. This reflects a deliberate indifference towards Mr. Mitchell.

186. Defendants Saint Louis County and Chief Medical Officer Doucette failed to provide adequate supervision to ensure that inmates were receiving proper medical care in accordance with Missouri State law. In so failing to provide adequate supervision, Defendants demonstrated deliberate indifference towards Mr. Mitchell.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

187. Defendants acted under color of State law to show deliberate indifference to the serious medical needs of Mr. Mitchell by acknowledging a need for such care, thus violating § 221.120 RSMo.

188. As a direct and proximate cause of Defendants' failures to follow § 221.120 RSMo. was observed at the Justice Center, Mr. Mitchell suffered general and special damages.

189. The conduct of the Defendants was willful, malicious, oppressive, and reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff Juan Mitchell respectfully prays this Honorable Court enter judgement in his favor against each of the individually-named Defendants; award him compensatory and punitive damages award him reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper

**COUNT IV**

**Wrongful Death**

***Against Defendants Banasco, Doucette, McMahan, Parker, Heitman, Reynolds, Howard, Cora, and Does 1-15***

190. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

191. Defendants owed a duty to ensure the safety of inmates and detainees in the Justice Center, including Mr. Mitchell. This duty included the duty to provide proper medical care to maintain Mr. Mitchell's health.

192. Defendants' actions resulted in a violation of the duty owed to Mr. Mitchell to ensure his basic welfare.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

193. As a direct and proximate result of Defendants' actions, Mr. Mitchell was deprived of potentially life-saving medical care and experienced injures, was caused to suffer conscious pain and suffering, and loss of life.

194. Plaintiff is entitled to recover damages against the Defendants according to § 537.080 RSMo. for the wrongful injuries and death of Mr. Mitchell, including special damages for his funeral and burial.

195. Mr. Mitchell endured physical and mental pain during the days leading up to his death, an item of damage that should be considered and awarded.

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them jointly and severally, for damages, including prejudgment interest, in a fair and reasonable sum in excess of $75,000.00, their costs incurred herein, punitive damages, and for such other relief as is deemed appropriate by the Court.

**COUNT V**

**Unconstitutional Pattern, Practice, and/or Custom, Cognizable Under 42 U.S.C, § 1983**

***Against Defendant St. Louis County***

196. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

197. As described herein, Defendants John and Jane Doe Correctional Officers and Staff, while acting under color of state law and alone and in concert with others, deprived Mr. Mitchell of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

198. The misconduct of the individually-named Defendants and Defendants John and Jane Doe Correctional Officers and Staff, as described herein, was authorized by and undertaken

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

pursuant to a practice and custom that what so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants St. Louis County in that it is and was it was the regular pattern, practice and custom to not require inmates to stand for standing counts and/or "sign of life" checks, among other things.

199. More specifically, Defendant St. Louis County's inadequate policies, procedures, custom, practices and actions – as well as their inadequate training and supervision permitted failures, including but not limited to: failures to send patients presenting with severe symptoms to the hospital and infirmary, failures to train, supervise and discipline personnel for violating standing count policies and policies requiring the taking of vital signs and blood pressure, failures to implement policies and/or supervise personnel responsible for checking and monitoring the functionality of life-saving emergency equipment in the infirmary, which, as a result, malfunctioned or otherwise did not work when Mr. Mitchell needed them, failed to train personnel related to how and when to perform CPR on patients in Mr. Mitchell's condition, failed to ensure that professional medical judgment or care would be ordered by outside treating physicians in situations like Mr. Mitchells', delays or non-responses to noted urgent conditions, delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations, failures to provide continuity of care by not documenting clinical observations, not properly diagnosing, and not providing adequate treatment; failures to provide pretrial detainees with qualified medical opinions rendered by on-site or off-site physicians; failures to deal with staffing shortages to ensure that patients receive the proper observation commensurate with their symptoms.

200. All of the above failures amounted to unconstitutional customs and practices of the jail by Defendant St. Louis County.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

201. The misconduct of the individually-named Defendants and Defendants John and Jane Doe Correctional Officers and Staff, as described herein, was authorized by and undertaken pursuant to a practice and custom that what so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants St. Louis County, in that it is and was it was the regular pattern, practice and custom to prohibit and preclude correctional officers and staff from adequately treatments patients for the reasons stated above.

202. The serious harms incurred by Mr. Mitchell were the direct consequence of this pattern, practice, and/or custom of Defendants St. Louis County.

203. As a direct and proximate consequence of the acts of Defendants St. Louis County, Mr. Mitchell has suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and loss of life.

204. As the result of the actions of the individually named Defendants, Defendants John and Jane Doe Correctional Officers and Staff, and Defendant St. Louis County, Mr. Mitchell has suffered in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and loss of life.

205. As a result of Defendant. Louis County's unlawful actions and infringements of his protected rights, Plaintiff Warren, on behalf of decedent Mr. Mitchell, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them jointly and severally, for damages, including prejudgment interest, in a fair and reasonable

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

sum in excess of $75,000.00, their costs incurred herein, punitive damages, and for such other relief as is deemed appropriate by the Court.

**COUNT VI**

**Medical Negligence**

***Against Defendants Banasco, Doucette, Parker, Heitman, Howard, Reynolds, Cora, St. Louis County, John and Jane Does***

206. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

207. A patient-physician relationship existed between (i) Defendant Doucette (as Plaintiff's physician and/or the Director of Public Health) and Defendants Parker, Heitman, Reynolds, Howard, Cora, and certain John and Jane Does (as Plaintiff's nurses and/or jail medical staff) and Plaintiff (ii) these Defendants owed Plaintiff a duty to provide medical care by using the degree of skill and learning ordinarily used under the same or similar circumstances by members of the medical profession while Plaintiff was an inmate at the Buzz -Westfall Justice Center.

208. Defendant Doucette was responsible for overseeing, reviewing, and tacitly approving and/or authorizing the care that was provided to Plaintiff or that should be provided to Plaintiff, and therefore owed a legal duty to protect Plaintiff from injury.

209. At minimum, Defendant Doucette is vicariously liable for Defendants Parker, Heitman, Howard, Cora, and certain John Doe's conduct that caused Plaintiff's injuries including, but not limited to, the failure to diagnose Mr. Mitchell's medical need and/or provide him with appropriate medical care.

210. Defendants Doucette, Parker, Heitman, Howard, Cora, St. Louis County, and Banasco and John Does breached their duties – on multiple occasions and in multiple ways – and were therefore negligent in the following ways, including:

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

a. failing to provide professional medical judgment and care that would be ordered by outside treating physicians

b. failing to properly monitor Mr. Mitchell's blood pressure;

c. failing to properly report and record symptoms, new symptoms, and/or the increasing of severity of symptoms to the necessary provider, including inability to walk and stand, unsteady gait, inability to talk, slurred speech, dehydration, vomiting, and pain;

d. failure to immediately transfer Mr. Mitchell to the infirmary but instead delaying his transfer for several hours without reason or excuse;

e. failing to properly treat Mr. Mitchell for dehydration;

f. failing to properly control and treat Mr. Mitchell's hypertension;

g. failing to immediately and properly call for EMS in a timely manner and when required by professional standards;

h. failing to perform CPR and/or to clear airways;

i. failing to respond appropriately to emergency and/or urgent situation; and

j. failing to properly monitor, test, check, and maintain emergency medical equipment for proper function.

k. failing to transport Mr. Mitchell immediately to the hospital when he presented with an unsteady gait and slurred speech.

211. As a direct and proximate cause of Defendants Doucette, Parker, Heitman, Howard, Cora, Banasco and St. Louis County and John Doe's negligence, Mr. Mitchell's diagnosis and treatment was severely delayed and denied which caused him to suffer severe physical pain and emotional distress and death.

212. Defendants Doucette, Parker, Heitman, Howard, Cora, and John Does—as licensed medical professionals — should have realized that his aforementioned conduct of failing to provide adequate medical care to Mr. Mitchell, failing to permit Mr. Mitchell to receive medical

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

care from outside medical providers, and allowing Mr. Mitchell to suffer extreme and debilitating pain relating to his medical condition, which involved an unreasonable risk of causing distress.

213. Indeed, the emotional distress or medical injury suffered by Mr. Mitchell, as the result of Defendants' conduct is medically diagnosable and/or is medically significant.

214. Plaintiff is entitled to recover all applicable damages including, but not limited to, damages related to pain and suffering, mental anguish, disfigurement, loss of capacity to enjoy life, loss of consortium, attorney's fees, and physical impairment.

215. Indeed, the emotional distress or mental injury suffered by Mr. Mitchell, as a result of Defendants' conduct, is and/or was medically diagnosable and is of sufficient severity to be medically sufficient.

216. Plaintiff is entitled to recover all applicable damages including, but not limited to, damages related to pain and suffering, mental anguish, disfigurement, loss of capacity to enjoy life, loss of consortium, attorney's fees, and physical impairment.

217. Defendant Doucette, Banasco, Parker, Heitman, Howard, Cora, and John and Jane Does acts and omissions were intentionally willful, wanton, reckless, and malicious and evince a complete and a conscious and reckless disregard of the rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient punish defendants and to deter others from like conduct in the future.

WHEREFORE, Plaintiff Juan Mitchell, on behalf of decedent Mr. Mitchell, respectfully prays that this Honorable Court enter judgement in her favor and Defendants award her compensatory damages; punitive damages and award his reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper.

**Count VIII**
**<u>Negligence</u>**

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

***Against St. Louis County***

218. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

219. Defendant St. Louis County had a duty to ensure that the medical equipment in the Buzz Westfall Justice Center was operational, well-maintained, functionable, and/or functioning.

220. Defendant St. Louis County's medical equipment, including but not limited to its oxygen takes and the automatic re-breather and suction machine, were not operational, well-maintained, functionable, and/or functioning.

221. Defendant St. Louis County's jail medical staff had an obligation to ensure that the medical equipment, including but not limited to oxygen tanks, rebreather, and suction machine were operational, well-maintained, functionable, and/or functioning.

222. Defendant St. Louis County's jail staff failed to ensure that the medical equipment, including but not limited to oxygen tanks and the automatic breather/automatic CPR machine, were operational, well-maintained, functionable, and/or functioning.

223. As the result of Defendant St. Louis County's medical equipment, including oxygen tanks and/or automatic breather/automatic CPR machine, being not operational, well-maintained, functionable, and/or functioning, Defendant St. Louis County's medical equipment was in a dangerous condition at the time of Mr. Mitchell's injuries.

224. Mr. Mitchell's injuries were directly and/or proximately caused by the dangerous condition of Defendant St. Louis County's property.

WHEREFORE, Plaintiff Juan Mitchell, on behalf of decedent Mr. Mitchell, respectfully prays that this Honorable Court enter judgement in her favor and Defendants St. Louis County; award her compensatory damages; award her reasonable costs and attorneys' fees; and grant her any and all such other relief as this Court deems just and proper.

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

## INJURIES AND DAMAGES

225. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

226. As a direct and proximate result of the negligent actions of the Defendants, decedent Mr. Mitchell suffered personal injury, pain and suffering, and mental anguish prior to his death. As a direct result of the negligent actions of the Defendants, Mr. Mitchell suffered a poor quality of life in the days preceding his death. Defendants' negligence and deliberate indifference directly contributed to the personal injury, pain and suffering, and mental anguish experienced by Mr. Mitchell.

227. As a direct and proximate result of the Defendants' negligence and deliberate indifference, Plaintiff was deprived of decedent's valuable services, companionship, comfort, consortium, instruction, guidance, counsel, training, support, brotherly love, and affection. Additionally, decent suffered great physical pain and mental anguish through the time period of the Defendants' negligence deliberate indifference to his serious medical needs to his death.

228. As a direct and proximate result of the Defendants' negligence and deliberate indifference in treating Mr. Mitchell's serious medical condition, Mr. Mitchell suffered loss of life. This also deprived him of future enjoyment of life and income.

229. Plaintiff is entitled to recover punitive damages from the Defendants for their intentional, willful, and malicious acts and/or omissions which constituted gross negligence, recklessness, and deliberate indifference to Mr. Mitchell's medical needs in violation of his civil rights pursuant to 42 U.S.C. § 1983.

## DEMAND FOR JURY TRIAL

Electronically Filed - St Louis County - December 25, 2022 - 04:16 PM

Plaintiff hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and such relief as is deemed appropriate for the Court.

Dated: December 25, 2022

Respectfully submitted,

***PEDROLI LAW, LLC***

Mark J. Pedroli, MBE 50787
***PEDROLI LAW, LLC***
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax
Mark@PedroliLaw.com

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| JUAN MITCHELL , Individually and on behalf of JOVON MITCHELL, deceased | ) |
| Plaintiff, | ) |
| | ) Case No: 23SL-CC00013 |
| v. | ) |
| | ) Division 17 |
| ST. LOUIS COUNTY, et al., | ) |
| Defendants. | ) |

**PLAINTIFF'S NOTICE[1] OF FIRST AMENDED PETITION**

Plaintiff, by and through counsel, and for his Motion pursuant to Rule 55.33 of the Missouri Rules of Civil Procedure, states the following:

1. Plaintiff filed his original petition on December 25, 2022.

2. Pursuant to Rule 55.33 of the Missouri Rules of Civil Procedure, a pleading may be amended once as a matter of course at any time before a responsive pleading is served.

3. A responsive pleading to Plaintiff's petition has not been served.

4. Plaintiff's First Amended Petition contains no new counts or defendants and is substantially similar to the original petition, see Amended Petition attached as exhibit A.

WHEREFORE, Plaintiff requests this honorable Court take notice of Plaintiff's petition as properly filed and/or in the alternative grant Plaintiff's motion for leave to file Plaintiff's First Amended Petition.

[1] Or in the alternative a motion for leave to file an amended petition if this Court deems leave necessary to file an amended petition in these circumstances.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

Dated: January 11, 2023

Respectfully submitted,

Mark J. Pedroli, MBE 50787
***PEDROLI LAW, LLC***
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax
Mark@PedroliLaw.com
*Attorney for Plaintiff*

EXHIBIT A

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
TWENTY-FIRST JUDICIAL CIRCUIT
STATE OF MISSOURI

JUAN MITCHELL , Individually and on behalf of JOVON MITCHELL deceased,

Plaintiff,

v.

SAINT LOUIS COUNTY, MISSOURI,

Serve: County Executive Sam Page
41 South Central Avenue, 9th
Clayton, Missouri 63105,

EMILY DOUCETTE,

Serve: Department of Public Health
6121 North Hanley Road
Berkeley, MO 63134,

RAUL BANASCO,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

C.O. MCMAHAN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

TODD PARKER, PA,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

CONNIE L. HEITMAN, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

Case No. 23SL-CC00013

Division 17

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

VICKI REYNOLDS, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

SHYLA HOWARD, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105,

KATIE CORA, RN,

Serve: Buzz Westfall Justice Center
100 South Central Avenue
Clayton, Missouri 63105

JOHN and JANE DOES 1-10

Defendants.

**FIRST AMENDED PETITION FOR DAMAGES**

COMES NOW, Plaintiff, Juan Mitchell, Individually and on behalf of Jovon Mitchell, deceased, and for her Complaint against the Defendants who are sued in their individual and official capacities states the following:

**STATEMENT OF CASE**

1. Jovon Mitchell, 31, was the fifth person to die in St. Louis County jail as a pretrial detainee within a twelve-month period in 2019. After an intense struggle for medical treatment while in custody, Mr. Mitchell lost consciousness on Christmas day 2019 and was pronounced dead several days later. Mr. Mitchell's death is directly attributable not only to the repeated

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

incidents of deliberate indifference, but also to St. Louis County's refusal to correct their failures, failures known to them from investigations into previous deaths in 2019 and before, including their repeated refusals to follow their own ministerial policies and the lack of supervision therein. St. Louis County corrections officers knew Mr. Mitchell was in serious medical need and, his needs were obvious to them. St. Louis County Department of Health Corrections Medicine staff also disregarded ministerial duties, ignored Ms. Starks serious medical needs and his pleas for help. After vomiting for days, nausea, dizziness, difficulty standing, walking, speaking and an intense throbbing headache, Mr. Starks couldn't even see his brother and his nephew for a family visit right before Christmas. Then, matters only got observably worse. Mr. Mitchell's symptoms escalated to the point he couldn't stand, walk, or talk without slurring his words, changes noted by both correctional and heath care staff. And, at his worst, when Mr. Mitchell and his roommate were pleading for medical attention at 4:00 am on Christmas, Mr. Mitchell was visited and summarily dismissed by a jail nurse. Considering these serious, observable and escalating symptoms, instead of being sent immediately to the hospital or the infirmary, Mr. Mitchell was told he would have to stay in his cell. According to the jail's own internal affairs report, the next nurse to see Mr. Mitchell, on Christmas morning, would find Mr. Mitchell in an even more critical and precarious condition, with intense head pain, dehydration, dry tongue, cracked lips, inability to stand on his own and slurred speech. Yet, despite this stark reporting about a previously healthy 31-year-old man, Mr. Mitchell *still* wasn't sent to the hospital or even the infirmary. Instead, the morning jail nurse dispatched Mr. Mitchell back to his cell. In acute medical distress and unable to walk back to his cell without assistance, Mr. Mitchell then waited in his cell for nearly four hours before being told he could go to the infirmary whereupon he was told to leave the pod without assistance. Other detainees, seeing his condition tried to help him walk and were chastised

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

and told to leave Mr. Mitchell alone while he, alone, staggered to the sallyport holding onto the walls to keep his balance, according to video obtained by Plaintiff. Mr. Mitchell was eventually taken to the infirmary but Mr. Mitchell still did not receive any medical treatment and was mostly left alone in a locked cell for another four hours when he lost consciousness and was discovered on the floor of his cell by a corrections officer on our about 5:15 p.m. Instead of sprinting into action, the correctional officer slowly kept doing his rounds, had a conversation with another detainee and after a significant delay informed the nurse of Mr. Mitchell's condition. In these critical minutes, the St. Louis County Justice Services Internal Affairs report stated, "the officer responded *without a sense of urgency* to a medical emergency and ***falsified*** his report to reflect that he did".

2. When the nurse eventually arrived to assess Mr. Mitchell, he was barely or not breathing at all and had an oxygen saturation level as low as 8%. Yet no one initiated CPR or called 911. The nurse reported secretions coming from his Mr. Mitchell's mouth and nose. But, when she attempted to clear his airwaves, the infirmary's suction equipment on the crash cart malfunctioned because Corrections Medicine failed to perform functionality checks. Losing more critical time, this nurse attempted to use a re-breather over the mouth of Mr. Mitchell, but the oxygen tank malfunctioned and/or was empty. Panic ensued in the infirmary as nurses shouted out to call EMS and *ask them to bring oxygen*.

3. Despite intense political and media scrutiny of jail and medical operations that began with the death of former DEA agent Larry Reavis, 51, in January 2019, and continued with John Shy, 29, and Lamar Catchings, 20, both in February 2019, and then Daniel Stout, 31, in June 2019, now, at the culmination of 2019, and after promises of significant reform, a 31-year-old man who couldn't walk or talk without slurring wouldn't be sent to the hospital and couldn't obtain

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

routine emergency life-saving care in the infirmary. Emergency Medical Services ("EMS") were finally called around 5:25 p.m. and arrived at 5:30 p.m. When EMS arrived, Mr. Mitchell had no pulse so EMS initiated CPR, but Mr. Mitchell's brain had been deprived of oxygen too long, it was too late to save his life. Mitchell's large and loving family would rush to the hospital on Christmas Day only to learn their beloved son, grandson, brother, and cousin was brain dead. The family would bury the 31-year old Mr. Mitchell and seek answers from St. Louis County about how a fifth pretrial detainee, their family member, could die in less than a year.

4. Under intense public scrutiny, St. Louis County media relations sprang into action and issued two press releases, including one on Christmas evening and one announcing Mr. Mitchell died. Both press releases were inaccurate, concealing the most relevant and critical facts from Mr. Mitchell's family and the general public, including Mr. Mitchell's inability to walk, his pleas to go to the hospital at 4:00 a.m., vomiting, slurring of words, and the jail's refusal to send him to the hospital or even the infirmary. Not surprisingly, St. Louis County also concealed the shocking fact that emergency life-saving medical equipment malfunctioned thereby failing Mr. Mitchell in his time of greatest need. Instead, St. Louis County summed Mr. Mitchell's complaints up as a "headache" and concealed the facts. After the first four deaths in 2019, St. Louis County promised transparency but, the Mitchell family would only learn the truth after a year's long investigation by Plaintiff.

5. Accordingly, Plaintiff Juan Mitchell, Individually and on behalf of Jovon Mitchell seeks judgement against the above-named Defendants, in their individual capacities, for violations of Mr. Mitchell's Constitutional rights to receive adequate medical care under the Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983 and 1988, and Missouri state law, including claims for negligence, medical negligence, negligence per se, and wrongful death. Further, Plaintiff Juan

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

Mitchell, individually and on behalf of Jovon Mitchell (decedent), brings claims against Defendant Saint Louis County, itself, under theories of municipal liability ("*Monell*" liability), for maintaining unconstitutional policies, practices, and customs as well as for failures to train, supervise, and/or discipline its employees.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over the parties.

7. Venue is proper to this Court, pursuant to Mo. Rev. Stat. § 105.055, which provides that "[a] civil action commenced pursuant to this subsection may be brought in the circuit court for the county where the alleged violation occurred, the county where the complainant resides, or the county where the person against whom the civil complaint is filed resides" and the violations alleged herein occurred within the geographical boundaries of St. Louis County, Missouri.

## PARTIES

8. Plaintiff Juan Mitchell (hereinafter "Plaintiff Mitchell") is and was at all times relevant herein a citizen of the United States of America and was a resident of the State of Missouri. He is currently residing in Florida. Further, Plaintiff Juan Mitchell is the brother of Jovon Mitchell (hereinafter "Mr. Juan Mitchell) and therefore the appropriate party to bring action on his behalf.

9. Defendant St. Louis County, Missouri (hereinafter "Defendant St. Louis County") is a body politic, municipal corporation, and/or political subdivision of the State of Missouri, organized and existing pursuant to the Missouri Constitution and state law. Defendant St. Louis County operates the Buzz Westfall Justice Center (hereinafter "Justice Center") through its Department of Justice Services and provides healthcare services to inmates of the Justice Center through the Corrections Medicine Program operated by the St. Louis County Department of Public Health.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

10. Defendant Emily Doucette (hereinafter "Defendant Doucette") is and was, at all times relevant hereto, a citizen of the United States and the acting Director and/or Co-Director of Defendant St. Louis County's Department of Public Health. On information and belief, Defendant Doucette, as the acting Director and/or Co-Director of Defendant St. Louis County's Department of Public Health, held final policymaking authority for the operations of the Corrections Medicine Program and was responsible for the supervision of the provision of health and medical care to inmates in the Justice Center, including but not limited to training and supervision of staff and the implementation and enforcement of health policies and procedures at the Justice Center. For purposes of Plaintiff's federal claims, Defendant Doucette is named in her individual capacity.

11. Defendant Raul Banasco (hereinafter "Defendant Banasco") is and was at all time relevant hereto a citizen of the United States and the Director of St. Louis County's Justice Services and held final policy making authority for the operations of the jail. and was responsible for the supervision of corrections officer and the implementation of policies in the Justice Center, including but not limited to training and supervision of staff and the implementation and enforcement of policies and procedures at the Justice Center. For purposes of Plaintiff's federal claims, Defendant Banasco is named in his individual capacity

12. Defendant (First Name Unknown) McMahan (hereinafter "Defendant McMahan") is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of corrections officer. At all times relevant hereto, Defendant McMahan was acting under color of state law and authority of his position with Defendant St. Louis County. For purposes of Plaintiff's federal claims, Defendant McMahan is named in his individual capacity.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

13. Defendant Todd Parker (hereinafter “Defendant Parker”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Physician Assistant. At all times relevant hereto, Defendant Parker was acting under color of state law and authority of his position with Defendant St. Louis County. For purposes of Plaintiff’s federal claims, Defendant Parker is named in his individual capacity.

14. Defendant Connie L. Heitman (hereinafter “Defendant Heitman”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Heitman was acting under color of state law and authority of her position with Defendant St. Louis County. For purposes of Plaintiff’s federal claims, Defendant Heitman is named in her individual capacity.

15. Defendant Vicki Reynolds (hereinafter “Defendant Reynolds”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Reynolds was acting under color of state law and authority of her position with Defendant St. Louis County. For purposes of Plaintiff’s federal claims, Defendant Reynolds is named in her individual capacity.

16. Defendant Shyla Howard (hereinafter “Defendant Howard”) is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Howard was acting under color of state law and authority of her position with Defendant St. Louis

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

County. For purposes of Plaintiff's federal claims, Defendant Howard is named in her individual capacity.

17. Defendant Katie Cora (hereinafter "Defendant Cora") is and was, at all times relevant hereto, a citizen of the United States and employed by Defendant St. Louis County at its Justice Center, holding the title and/or position of Nurse. At all times relevant hereto, Defendant Cora was acting under color of state law and authority of her position with Defendant St. Louis County. For purposes of Plaintiff's federal claims, Defendant Cora is named in her individual capacity.

18. Defendants John and Jane Does' are Corrections Officers, Corrections Medicine staff and/or third-party medical providers and were, at all times relevant hereto, employed or contracted by Defendant St. Louis County at its Justice Center, holding supervisory ranks and/or titles and/or positions of correctional officers and supervisors and health care staff, including corrections officers and medical providers. At present, these individuals have yet to be identified by names but were, at all times relevant hereto, acting under color of state law and authority of their positions with Defendant St. Louis County. For purposes of Plaintiff's federal claims, John and Jane Doe Correctional Officers, Corrections Medicine and third-party medical providers are named in their individual capacities. Plaintiff's information and belief regarding these individuals is based upon redacted reports and records obtained during Plaintiff's pre-litigation investigation. The unredacted versions of the reports and other wholly undisclosed records are presently, exclusively, and uniquely in the custody and control of Defendant St. Louis pending discovery.

**ALLEGATIONS COMMON TO ALL COUNTS**

19. At the time of his pretrial detention, Mr. Mitchell was an otherwise healthy male.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

20. On information and belief, during his pretrial detention, Mr. Mitchell has no history of malingering and was a cooperative and compliant inmate.

21. On or about December 23, 2019, Mr. Mitchell began to suffer from a headache and began vomiting.

22. On or about December 24, 2019, Mr. Mitchell woke up and told his cellmate that his head was hurting.

23. On his way to breakfast, Mr. Mitchell's cellmate informed a correctional officer that Mr. Mitchell was not well and requested a sick slip form on Mr. Mitchell's behalf.

24. After Mr. Mitchell's roommate returned from breakfast, Mitchell was lying on a mattress he placed on the floor.

25. Shortly after the roommate returned from breakfast, Mr. Mitchell vomited again and told his roommate that his head was hurting badly, he felt like the room was spinning, and he was sick to his stomach.

26. Mr. Mitchell continued to vomit several more times that day.

27. Mr. Mitchell also had extreme difficulty standing and walking.

28. Mr. Mitchell's brother (Plaintiff) and his nephew came to visit him at around 12:20 p.m., on that same day of December 24, 2019, but as noted by C.O. Aaron Mitchell in the IJMS log, Mitchell was "unable to get up."

29. Plaintiff, Mr. Mitchel's brother was told that Mr. Mitchell couldn't see him because he was in the infirmary.

30. However, despite corrections personnel's awareness of Mr. Mitchell's symptoms and despite the statements to Mr. Mitchell's brother, Mr. Mitchell had not received any medical treatment before this point, nor had he been taken to the infirmary.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

31. That same morning, of December 24, 2019, another detainee, not Mr. Mitchell's roommate, observed Mr. Mitchell stumbling about his room and falling over trying to get himself dressed.

32. After observing Mr. Mitchell in this condition, this detainee told a corrections officer that Mr. Mitchell needed assistance, but the correctional officer told this detainee to "mind his own business" and return to his cell.

33. By around 12:00 p.m., on December 24th, 2019, a third detainee observed that Mr. Mitchell couldn't walk and reported this fact to a corrections officer.

34. Mr. Mitchell did not eat breakfast or dinner on December 24, 2019.

35. Despite reporting symptoms of headache, vomiting, nausea, and dizziness, all morning on December 24th, at his first encounter with a corrections medicine practical nurse Shatia Reece, on or around 1:29 p.m., Mr. Mitchell was not provided with any treatment for his headache, nor was his headache noted in the medical record.

36. However, practical nurse Shatia Reece did note vomiting "since yesterday" (December 23, 2019), nausea, and dizziness, and contacted Defendant Parker by phone to report Mr. Mitchell's condition.

37. Defendant Parker ordered 12.5 mg of Promethazine and to "[O]btain vital signs q shift for 2 days. Pt to increase water intake. Nursing should report any abnormalities with vitals or new pt complaints to the on call medical provider".

38. On December 24, 2019, Mr. Mitchell was not, at any time, taken to the infirmary nor examined by a licensed physician and/or medical doctor.

39. During an informal count, at approximately 2:20 pm on December 24, 2019, Mr. Mitchell stated that he was ill and unable to stand.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

40. John Doe 1 did not make Mr. Mitchell stand, in direct contradiction with jail policies.

41. At 4:45 p.m., Mr. Mitchell was again unable to stand for the formal count.

42. John Doe 2 did not make Mr. Mitchell stand, in direct contradiction with jail policies.

43. Mr. Mitchell's inability to stand was not recorded in jail records nor did the Doe correctional officers, upon information and belief, report this fact their supervisors.

44. Per orders, Mr. Mitchell's vital were taken at or around 6:41 p.m. and again at or around 9:55p.m.

45. During these vital checks, Mr. Mitchell reported vomiting another once or two times during Nurse Gosche's shift and he was given Tylenol in response to a body temperature of 99.5° F

46. On information and belief, Nurse Gosche told Defendant Parker that Mr. Mitchell had vomited several additional times.

47. During the evening count at 10:15 p.m. on December 24, 2019, Mr. Mitchell was again unable to stand for the standing count, but correctional officers failed to report this to their supervisors.

48. During the night of December 24, 2019, Mr. Mitchell's cellmate noted that Mr. Mitchell had complained throughout the night regarding hypersensitivity to noise and light causing increased the pain in his head.

49. Mr. Mitchell's roommate reported that, late during the night on December 24, 2019, Mr. Mitchell asked his roommate to turn off the lights, but the lights were already off and the cell was dark.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

50. On or around 4:05 a.m. on December 25, 2019 Mr. Mitchell or his cellmate pressed the emergency call button.

51. Mr. Mitchell told unit control he had the worst throbbing headache of his life and was still dizzy and unable to walk.

52. Mr. Mitchell's roommate reported that Mr. Mitchell had stated that he felt like he would pass out, was completely unable to speak at times or slurring his speech when he could talk, was unsteady and stumbling, and pleaded to be taken to the hospital.

53. On or around 4:18 a.m., Defendant Heitman reported to Mr. Mitchell's unit, at a table outside his cell and accompanied by two corrections officers, John Doe 3 and 4 in response to the emergency call button.

54. Defendant Heitman recorded Mr. Mitchell's symptoms as "bad headache" "throbbing in the forehead", nausea, vomiting, difficulty standing, and complaints of inability to eat all day.

55. Defendant Heitman did not transfer Mr. Mitchell to the infirmary nor, upon information and belief contact a medical provider or Defendant Parker, but instead merely gave Mr. Mitchell Tylenol.

56. Mr. Mitchell's gait was unsteady during Defendant Heitman's examination and visit.

57. Despite Defendant Parker's standing order to be contacted if any new symptoms developed, upon information and belief, Defendant Heitman failed to apprise Defendant Parker of Mr. Mitchell's stumbling or unsteady gait.

58. Mr. Mitchell's cellmate tried to provide Defendant Heitman with additional details regarding Mr. Mitchell's condition, including how much he was vomiting and his difficulty

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

standing, walking and speaking, but despite him telling her these specific details of his observations, Defendant Heitman told Mr. Mitchell's cellmate that she "was not talking to him" and refused to have any discussion with him.

59. Mr. Mitchell's cellmate expressed his belief that Defendant Heitman was angered about having to treat Mr. Mitchell at 4:00 a.m. in the morning.

60. During her visit, Defendant Heitman failed to record Mr. Mitchell's blood pressure, even though that was her standing orders, and the policy of Correction Medicine.

61. C.O. Washington, who was present with Defendant Heitman during her visit, described Mr. Mitchell's speech as slurred and noted that Mr. Mitchell was asking to be taken to the infirmary.

62. Despite Mr. Mitchell's symptoms and poor physical condition, Defendant Heitman failed to send Mr. Mitchell to the hospital, to the infirmary and, upon information and belief, failed contact the on-call provider to report the slurred speech, inability to talk, and difficulty walking.

63. A few hours later, at around 6:00 a.m., Mr. Mitchell or his roommate pushed the emergency call button complaining of the same and worsening symptoms and C.O. Washington again contacted Defendant Heitman.

64. Upon information and belief, based upon jail records, Defendant Heitman told C.O. Washington that Mr. Mitchell would have to wait for the morning nurse and leave his housing unit and walk out to see the diabetic nurse during the morning medication rounds.

65. At 6:50 a.m., jail video shows Mr. Mitchell unable to walk under his own power to see the diabetic nurse and requiring assistance from other inmates helping him stand and walk in order to leave his pod on Christmas morning.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

66. Mr. Mitchell is seen on the jail video holding himself up using the walls, and eventually sliding down the wall onto the floor, no longer able to stand, and then laying on the floor of the sallyport for approximately ten minutes.

67. At around 7:00 a.m., Mr. Mitchell was assisted to his feet by inmates and carried to meet nurse, where he waited for approximately fifteen minutes while the nurse dispenses medication to other inmates.

68. On or about 7:15 a.m., Defendant Reynolds assessed Mr. Mitchell and noted in her report even more serious and escalating symptoms of headache, vomiting, "very dry" mouth, lips and tongue, as well as Mr. Mitchell stating that he felt he was going to pass out.

69. Upon information and belief, while Defendant Reynolds contacted Defendant Parker again, Defendant Reynolds took no further action and had Mr. Mitchell returned back to his cell.

70. Despite Mr. Mitchell's medical records showing a serious medical need and his requesting emergency help throughout the night before, Defendant Reynolds admitted that she failed to take any immediate action but instead delayed in order to make sure Mr. Mitchell wasn't faking or malingering.

71. Despite knowing that false claims of malingering caused the death 20-year old pretrial detainee Lamar Catchings just ten months prior as he was suffering from a very curable leukemia, Mr. Mitchell suffered the same fate.

72. At the 10:30 a.m., on December 25, 2019, during the medication round, Defendant Reynolds noted that Mr. Mitchell had an "unsteady gait."

73. Defendant Reynolds noted in her medical records that she talked to Defendant Parker "again" and Mr. Mitchell was be sent to the infirmary.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

74. Several additional hours passed between when Defendants Reynolds and Parker determined that Mr. Mitchell needed to be sent to the infirmary and when he was actually transferred to the infirmary.

75. At approximately 12:36 a.m., Mr. Mitchell was told to leave his cell and pod, without assistance, to meet transport to go to the infirmary.

76. Mr. Mitchell stumbled out of the housing unit, staggered as he walked, and had to hold onto the wall.

77. At approximately 12:41 p.m., on December 25, 2019, Mr. Mitchell was taken in a wheelchair to the infirmary.

78. Upon his arrival at the infirmary, Defendant Howard, an infirmary nurse that day, noted that Mr. Mitchell was reporting a throbbing headache, vomiting, denies all cold symptoms, and she observes slurring of his speech, a dry tongue, "lips dry and cracked", and the urinalysis was "indicative of dehydration.".

79. The medical records show that vital signs were not recorded at the 12:41 p.m. encounter with Nurse Howard during the infirmary intake.

80. Nurse Howard reported these symptoms and observations to Defendant Parker who ordered orthostatic BP's and suggested Nurse Howard start an I.V. at 150ml/hr for total of 2L if Mr. Mitchell was unable to drink enough or hold it in.

81. Defendant Parker ordered orthostatic blood pressure tests, but according to the medical records, these tests didn't begin until 1:16 p.m., continued at 2:15 p.m., 2:18 p.m., and 2:21 p.m. and showed a blood pressure that escalated to the highest recording of 155 systolic and diastolic of 91.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

82. Defendant Howard did nothing to address the escalating blood pressure or otherwise treat Mr. Mitchell for any of his conditions except perhaps giving him a cup of water.

83. After the 2:21 p.m. orthostatic blood pressure test, Mr. Mitchell was locked up in his cell, and, despite the orders to observe fluid intake or administer an IV, no corrections medicine staff or nurse would observe Mr. Mitchell again until he was found unconscious *three* hours later.

84. That evening, at approximately 4:00 p.m., Defendant McMahan brought dinner to inmates in the infirmary, but Mr. Mitchell was unable to eat his meal. and the meal was collected uneaten about fifteen minutes later.

85. Then at 5:14 p.m., Defendant McMahan completed his tour of the infirmary and observed Mr. Mitchell was laying on the floor, with his head against the door and non-responsive.

86. In fact, after observing Mr. Mitchell unconscious, Defendant McMahan failed to immediate action or to inform a nurse or medical provider, but instead slowly continued his rounds, spoke with another inmate for approximately thirty seconds, and then spent more time at the nursing station.

87. The jail's internal affairs report stated that Defendant McMahan "responded without a sense of urgency to a medical emergency and falsified his report to reflect that he did."

88. When Defendant Cora went to Mr. Mitchell's cell to check on him, he was not breathing and showed an oxygen saturation level as low as 8%.

89. Defendant Cora called a "Code 1"

90. Defendant Cora did not initiate CPR.

91. Defendant Cora did not immediately call or direct someone to call 911 or Clayton EMS.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

92. Instead, approximately five minutes elapsed between the time Defendant Cora called a "Code 1" and someone at the jail called 911.

93. Clayton EMS or 911 should have been called immediately upon discovering Mr. Mitchell in his condition.

94. Defendant Cora reported that she had to place Mr. Mitchell on his side due to all the secretions coming from his mouth and nose.

95. When Defendant Cora attempted to use the infirmary's suction equipment, it malfunctioned.

96. When Defendant Cora attempted to use a rebreather and/or with oxygen tank, that equipment either failed or the oxygen tank(s) were empty.

97. St. Louis County Justice Center and Corrections Medicine failed to perform functionality tests on either the rebreather oxygen tanks or the suction device.

98. Several additional minutes passed before additional nurses arrived with a functional oxygen tank for Mr. Mitchell.

99. On or about 5:25 p.m. when Clayton EMS arrived at the infirmary they found Mr. Mitchell wasn't breathing and had no pulse.

100. Prior to the arrival of Clayton EMS, no corrections medicine staff attempted to perform mouth-to-mouth resuscitation or chest compressions on Mr. Mitchell.

101. Immediately upon Clayton EMS's arrival, CPR was finally initiated.

102. After three or four rounds of CPR, Clayton EMS was able to get Mr. Mitchell's pulse re-started, but it was too late, Mr. Mitchell would later be declared brain dead at the hospital.

103. Upon arrival at St. Mary's hospital, Mr. Mitchell was "unresponsive to light" and had "no response to painful stimuli".

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

104. At approximately 6:11 p.m., Mr. Mitchell went into cardiac arrest prior to be taken to an operating room.

105. Upon completion of emergency surgery, Mr. Mitchell was diagnosed with cardiac arrest, hypothermia, lactic acidosis, tachycardia, and a brain mass.

106. A 7:00 p.m. brain scan indicates that there was an approximately 3 cm mass of blood in Mr. Mitchell's head.

107. At 8:21 p.m., December 25, 2019, Mr. Mitchell was taken via EMS to St. Louis University Hospital.

108. At 7:43 a.m., on Friday December 27th, 2019, Mr. Mitchell was official pronounced brain dead at SLU Hospital.

109. St. Louis County would issue a series of press releases about Mr. Mitchell's hospitalizations and death, which concealed key facts from Mr. Mitchell's family and the St. Louis public, including employees ignoring his serious medical condition, his pleas for help, his inability to walk and talk, the repeated failures to make Mr. Mitchell stand for the sign-of-life checks, the multiple lifesaving emergency equipment failures, the delays in infirmary emergency response, and the falsification of records by a corrections officer.

110. Because Mr. Mitchell was the fifth death in a calendar year, in a year of significant and serious public scrutiny of the jail by newspapers and the public at large, St. Louis County hid all of these serious failures and internal accusations of wrongdoing.

111. St. Louis County press releases congratulated correctional staff and St. Louis County and its officials for the good job they did in treating Mr. Mitchell.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

112. On December 26, 2019, Justice Service's issued a press release, stating that a "corrections officer observed the person becoming unconscious" and "immediately involved the jail's medical staff."

113. These statements were untrue and contradicted by Justice Services' Internal Affairs investigative report, which accused the corrections officer of falsifying records. However, despite this, the press release was never corrected or updated with accurate information.

114. Indeed, three nurses, Defendants Heitman, Reynolds, and Howard would report and/or observe vomiting, slurred speech, problems walking and unsteady gait over a period of thirteen hours without taking any emergency action including calling 911, however, this fact remained concealed from the Mitchell family and the general public.

115. Despite Defendant Parker stating that if Mr. Mitchell is having difficulties with ambulation, he might need to go to the hospital, Mr. Mitchell was not sent to the hospital even after subsequent reporting that Mr. Mitchell was indeed having difficulty ambulating.

116. St. Louis County also concealed the fact that correctional officers continued to violate the standing count policies, even after these policy violations were implicated in previous deaths at the jail, including the numerous deaths in the last twelve months.

117. The press release further specifically stated: "While in custody, the patient received *regular* medical care."[emphasis added]

118. Justice Services Policy CM-21 required that all detainees housed for a period longer than twelve months shall be scheduled for an annual health examination.

119. Mr. Mitchell was housed since October 2016 yet never saw a provider.

120. Mr. Mitchell was housed since October 2016 yet never saw a provider for an annual health examination.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

121. Therefore, St. Louis County also violated Justice Services Policy CM-21 by not administering annual physicals to Mr. Mitchell in the years prior to his health emergency, all while he was a pretrial detainee.

122. Upon information and belief, St. Louis County Corrections Medicine had staffing problems between December 24 and 25, 2019.

123. Upon information and belief, Defendants knew or should have known about the staffing problems.

124. Upon information and belief, because of the known problem with less than adequate Corrections medicine staff on December 24 and 25, 2019 Defendants should have known they didn't have adequate resources to observe and monitor someone with Mr. Mitchell's serious symptoms and should have sent him to this hospital where Mr. Mitchell could have received proper monitoring and observation.

125. Defendants were aware that Mr. Mitchell was suffering from a serious medical condition and in need of medical attention.

126. Defendants were aware that even laypersons in the jail were aware of Mr. Mitchell's need for immediate health treatment.

127. Even though corrections medical staff knew and/or should have known of Mr. Mitchell's serious need for medical attention, they failed to provide him with adequate and timely medical care, including but not limited to having him transferred to the infirmary, to the hospital, and/or contacting a medical provider.

128. On information and belief, Justice Services' staff, including the individually named Defendant correctional officers and supervisory staff and/or Defendants John and Jane Doe Correctional Officers and Staff, knew and/or should have known that, Mr. Mitchell made multiple

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

requests for medical care and/or attention, including but not limited to being taken to the infirmary, hospital, and/or to be seen by a physician.

129. Based on Mr. Mitchell's condition and the Defendants' awareness of it, Defendants were aware that the medical care Mr. Mitchell was receiving was inadequate.

130. Defendants, acting individually and in concert with one another, attempted to conceal their negligence and deliberate indifference toward Mr. Mitchell demonstrating an awareness of the inadequacies of his treatment.

131. Defendants individually and in concert with one another intentionally, willfully, maliciously, and while acting under the color of state law, showed a deliberate indifference to Mr. Mitchell's medical needs, in that they had actual knowledge of his poor health, obvious to a layperson, and did not provide appropriate medical treatment or allow him contact with anyone who could provide proper and/or adequate medical treatment.

132. Defendants, individually and in concert with one another, employed policies and procedures and customs promulgated by them and Saint Louis County, Missouri that insufficiently provided medical assessment, treatment, ongoing care, and emergency life-saving care to Mr. Mitchell and violated his civil rights.

133. Defendant Saint Louis County enacted inadequate policies and did not train, supervise and discipline its employees to ensure existing policies were followed to benefit the welfare of Mr. Mitchell.

134. Justice Services' staff and correctional officers routinely ignored the "sign of life" standing count policy, permitting detainees to not stand for the count and not make accurate annotations in the IJMS records.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

135. Corrections Medicine health care staff and nurses regularly and routinely failed to check and/or record vital signs including but not limited to blood pressure and thereby preventing nursing staff and physicians from providing proper oversight and supervision.

136. Justice Services' health care staff and nurses regularly and routinely failed to follow the standing orders of the authorizing physicians when examining and/or treating inmates.

137. On information and belief, Justice Services, Corrections Medicine and its staff, and its officials failed and/or refused to properly discipline offending staff members for their failures to follow the jail policies, procedures and standing orders of the authorizing physicians when examining and/or treating inmates.

138. On information and belief, Justice Services stated policy was to check on inmates and their health repeatedly throughout the day, including key tours and multiple "sign of life" checks conducted at multiple scheduled intervals throughout the day and night in which an inmate is forced to stand so that their *ability* to stand is confirmed.

139. Justice Services' stated policy requiring multiple, effective key tour checks, to observe inmates, was regularly and routinely violated by correctional officers and staff to such pervasive extent as to become the operative practice and custom of the jail.

140. On information and belief, Justice Services' training policies regarding the required key tour checks was inadequate and/or ineffective, to the extent that a significant portion of correctional officers and staff were unaware that such a policy even existed.

141. On information and belief, Justice Services, its officials, and its policymakers knew and/or should have known that correctional officers and staff regularly and routinely failed to perform the required standing "sign of life" checks.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

142. Defendant Banasco, Doucette, and/or the final policy makers for the jail and corrections medicine knew and/or should have known that correctional officers and staff regularly and routinely failed to perform the required multiple, standing "sign of life" checks.

143. Justice Services, its officials, and its policymakers failed to adequately and properly discipline offending staff members for their failures to perform the multiple, standing "sign of life" checks.

144. Defendants acted individually and in concert with one another to deprive Mr. Mitchell of appropriate medical care, to which he is entitled under the Eighth and Fourteenth Amendments to the Constitution and 42 U.S.C. § 1983.

145. As a direct and proximate cause of Defendants' negligence and deliberate indifference, Plaintiff suffered a loss of his beloved brother.

146. As a direct and proximate result of the actions of all Defendants described above and pursuant to § 537.090 RSMo., Plaintiff has damages as follows: damages that decedent Mr. Mitchell suffered between the time of his incarceration to the time of his death, and for the recovery of which the decedent might have maintained an action had death not ensued; pecuniary loss suffered by reason of the death of Mr. Mitchell; funeral expenses; and a reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, support and brotherly love of which the Plaintiff has been deprived by reason of the death of Mr. Mitchell.

147. All of the aforementioned actions demonstrate that Defendants' actions were reckless and/or callously indifferent to Mr. Mitchell's rights so as to justify consideration by the trier of fact of aggravating circumstances in determining the amount of damages to be allowed.

148. Plaintiff is entitled to compensation for violations of Mr. Mitchell's constitutional rights that all Defendants inflicted upon him, including, but not limited to all damages allowable

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

for wrongful death pursuant to § 537.080 RSMo; pain and suffering before death; attorney's fees; and punitive damages.

**COUNT I**

**<u>Failure to Provide Adequate Medical Care, Cognizable Under 42 U.S.C. § 1983</u>**

***Against Defendants Doucette, Banasco, McMahan, Parker, Heitman, Reynolds, Howard, Cora, and Does 1-10***

149. Plaintiff hereby incorporates by reference the allegations made in each preceding paragraph as if each were set forth herein.

150. Mr. Mitchell was experiencing objectively serious health symptoms in the days leading to his death

151. Defendants were aware of Mr. Mitchell's condition beginning on or about December 23, 2019 and continuing through December 25, 2019.

152. Defendants were aware of the seriousness and rapidly escalating nature of Mr. Mitchell's health complaints, and deliberately disregarded them, as demonstrated, *inter alia*, including but not limited to Mr. Mitchell's reports of his symptoms and requests for medical care, reports from other inmate/detainee's regarding Mr. Mitchell's medical condition and need for care, direct observations by correctional officers and jail medical staff, and Mr. Mitchell not being able to and required to stand for counts, not being able to stand at all, not being able to walk, and not being able to talk or talking with slurred speech.

153. The nursing visits did not amount to appropriate care for Mr. Mitchell as his condition continued to decline quickly and his symptoms demonstrated severe neurological and other health distress.

154. Defendants' deliberate denial of appropriate medical care demonstrates deliberate indifference towards Mr. Mitchell's condition.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

155. Defendants knew and/or should have known that Mr. Mitchell was at substantial risk of serious injury to his health, including the possibility of death, from his medical condition, but disregarded that risk by intentionally refusing and/or failing to take any reasonable measures to treat his medical conditions and/or address his medical needs.

156. Defendants' admission of Mr. Mitchell to the infirmary suggests, albeit late, an acknowledgment of the severity of his symptoms. However, their failure to treat him adequately, sooner, and also while in the infirmary suggests deliberate indifference towards Mr. Mitchell's health.

157. Defendants should have been aware that to deny Mr. Mitchell adequate medical care for his serious condition was to deny Mr. Mitchell his Constitutional rights.

158. In committing the acts alleged herein, Defendants acted willfully, recklessly, maliciously, and with deliberate indifference to Mr. Mitchell and his serious medical needs and need for medical care.

159. Defendants were acting under color of State law when they denied Mr. Mitchell his Constitutional right to adequate medical care.

160. As a direct and proximate result of the acts and omissions of Defendants, while acting alone and/or in concert with others and with deliberate indifference to Mr. Mitchell's rights and serious medical needs, Mr. Mitchell suffered severe and devastating damages and injuries, prior to his death, including but not limited to intense physical pain, the inability to walk, talk, the inability to get relief or assistance, suffering, severe anxiety, fear, mental anguish and ultimately death.

161. As the direct and proximate result of the acts and omissions of Defendants, while acting alone, in concert with others, and with deliberate indifference to Mr. Mitchell's rights and

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

serious medical needs, Plaintiff Juan Mitchell has been deprived of Mr. Mitchell's valuable services, companionship, comfort, consortium, support, brotherly love, and affection.

162. The conduct of Defendants, as alleged herein, was wanton, willful, undertaken with evil motives, and/or displayed a deliberate indifference to Mr. Mitchell's constitutional rights, privileges and immunities, thereby justifying award of punitive damages against each individual Defendant, in his or her individual capacity, in an amount sufficient to punish and deter Defendants and others from engaging in like misconduct in the future.

163. As a result of Defendants' unlawful actions and infringements of her protected rights, Plaintiff has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorney's fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff Juan Mitchell respectfully prays this Honorable Court enter judgement in his favor against each of the individually-named Defendants; award him compensatory and punitive damages award him reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper.

## COUNT II

**<u>Failure to Train, Supervise, and Discipline, Cognizable Under 42 U.S.C. § 1983</u>**

***Against Defendants St. Louis County, Doucette, Parker and Banasco***

164. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

165. Mr. Mitchell's symptoms were of sufficient severity that Mr. Mitchell should have received more appropriate medical care for his objectively serious medical condition.

166. Defendants were aware of the severity of Mr. Mitchell's health condition.

167. Defendants knew or should have known that failure to provide adequate medical care to Mr. Mitchell was a violation of his constitutional right.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

168. Defendant Saint Louis County oversaw policies implemented by Saint Louis County Public Health Department's Corrections Medicine policies and procedures for the Justice Center.

169. Upon information and belief, Defendant Doucette was responsible for the policies and procedures implemented by Saint Louis County Public Health Department's Corrections Medicine for the Justice Center.

170. Defendant Saint Louis County oversaw policies implemented by Saint Louis County Justice Services for the Justice Center.

171. Defendant Banasco was responsible for the policies and procedures implemented by Saint Louis County Justice Services for the Justice Center

172. Defendants were negligent in their supervision of Saint Louis County Public Health Department's Corrections Medicine and Justice Services policies and procedures for the Justice Center.

173. More specifically, Defendant St. Louis County, Doucette, Parker's and Banasco's inadequate policies, procedures, custom, practices and actions – as well as their inadequate training, supervision and discipline permitted failures, including but not limited to: failures to send patients presenting with severe symptoms to the hospital and infirmary, failures to train, supervise and discipline personnel for violating standing count policies and policies requiring the taking of vital signs and blood pressure, failures to implement policies and/or supervise personnel responsible for checking and monitoring the functionality of life-saving emergency equipment in the infirmary, which , as a result, malfunctioned or otherwise did not work when Mr. Mitchell needed them, failed to train personnel related to how and when to perform CPR on patients in Mr. Mitchell's condition, failed to ensure that professional medical judgment or care would be ordered

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

by outside treating physicians in situations like Mr. Mitchells', delays or non-responses to noted urgent conditions, delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations, failures to provide continuity of care by not documenting clinical observations, not properly diagnosing, and not providing adequate treatment; failures to provide pretrial detainees with qualified medical opinions rendered by on-site or off-site physicians; failures to deal with staffing shortages to ensure that patients receive the proper observation commensurate with their symptoms.

174. The facts alleged herein demonstrate corrections personnel working individually and in concert to conceal their violation of Mr. Mitchell's civil rights. These instances demonstrate an environment in which policies and procedures were routinely violated without regard for the health and safety of inmates.

175. Upon information and belief, Defendants St. Louis County, Doucette, Parker and Banasco were responsible for providing adequate training and supervision to ensure that such blatant, reckless, and dangerous indifference to jail and correction medicine policy did not occur.

176. Additionally, there are two recorded accounts of corrections personnel rejecting information about Mr. Mitchell's condition from other inmates.

177. This suggests an environment in which corrections personnel were willfully unaware of the severity of Mr. Mitchell's medical needs.

178. Defendant Saint Louis County's custom and/or practice to ignore obvious signs of a severe medical condition and not provide appropriate, adequate medical treatment deprived Mr. Mitchell of his constitutional rights.

179. Defendants Saint Louis County, Doucette, Parker, and Banasco's failure to adequately provide training and supervision to ensure that inmates received adequate medical

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

attention was a direct and proximate cause of Mr. Mitchell's deprivation of civil rights and death and demonstrates a deliberate indifference to Mr. Mitchell.

180. Defendants Saint Louis County, Doucette, Parker and Banasco's failure to supervise Justice Center and Corrections Medicine staff constituted a tacit authorization of the offensive acts.

181. Despite having knowledge of Mr. Mitchell's need for additional medical care, Defendants acted under color of State law to provide medical care that violated Mr. Mitchell's rights under the Due Process clause of the Fourteenth Amendment to the Constitution pursuant to 42 U.S.C § 1983. Defendants showed deliberate indifference to Mr. Mitchell's condition and treatment.

182. As a direct and proximate cause of the Defendants' negligent violation of Mr. Mitchell's civil rights, Mr. Mitchell suffered damages to which he is entitled under 42 U.S.C. § 1983.

183. The conduct of the Defendants was willful, malicious, oppressive, and reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff Juan Mitchell respectfully prays this Honorable Court enter judgement in his favor against each of the individually named Defendants; award him compensatory and punitive damages award him reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper.

**COUNT III**

**Negligence *Per Se* - Violation of R.S.Mo. § 221.120**

***Against Defendants St. Louis County, Banasco, Doucette, McMahan, Parker, Heitman, Howard, Reynolds, Cora, and Does 1-15***

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

184. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

185. Mr. Mitchell had objectively serious medical symptoms which required advanced medical treatment.

186. Defendants should have been aware that failing to provide Mr. Mitchell with adequate medical care for his symptoms was a violation of Missouri State law as written in § 221.120 RSMo.

187. The Revised Statutes of the State of Missouri provided in Section 221.120.1 that, "[i]f any prisoner confined to the county jail is sick and in the judgement of the jailer, requires the attention of a physician, dental care or medicine, the jailer shall procure the necessary medicine, dental care or medical attention necessary or proper to maintain the health of the prisoner."

188. Defendants failed to provide the necessary care to Mr. Mitchell, violating § 221.120 RSMo.

189. Defendants Saint Louis County and Doucette implicitly or explicitly adopted policies that allowed corrections personnel to provide negligent care to inmates such as Mr. Mitchell, in violation of § 221.120 RSMo. This reflects a deliberate indifference towards Mr. Mitchell.

190. Defendants Saint Louis County and Chief Medical Officer Doucette failed to provide adequate supervision to ensure that inmates were receiving proper medical care in accordance with Missouri State law. In so failing to provide adequate supervision, Defendants demonstrated deliberate indifference towards Mr. Mitchell.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

191. Defendants acted under color of State law to show deliberate indifference to the serious medical needs of Mr. Mitchell by acknowledging a need for such care, thus violating § 221.120 RSMo.

192. As a direct and proximate cause of Defendants' failures to follow § 221.120 RSMo. was observed at the Justice Center, Mr. Mitchell suffered general and special damages.

193. The conduct of the Defendants was willful, malicious, oppressive, and reckless and are of such nature that punitive damages should be imposed in the amount commiserate with the wrongful acts alleged herein.

WHEREFORE, Plaintiff Juan Mitchell respectfully prays this Honorable Court enter judgement in his favor against each of the individually-named Defendants; award him compensatory and punitive damages award him reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper

**COUNT IV**

**Wrongful Death**

***Against Defendants Banasco, Doucette, McMahan, Parker, Heitman, Reynolds, Howard, Cora, and Does 1-15***

194. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

195. Defendants owed a duty to ensure the safety of inmates and detainees in the Justice Center, including Mr. Mitchell. This duty included the duty to provide proper medical care to maintain Mr. Mitchell's health.

196. Defendants' actions resulted in a violation of the duty owed to Mr. Mitchell to ensure his basic welfare.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

197. As a direct and proximate result of Defendants' actions, Mr. Mitchell was deprived of potentially life-saving medical care and experienced injures, was caused to suffer conscious pain and suffering, and loss of life.

198. Plaintiff is entitled to recover damages against the Defendants according to § 537.080 RSMo. for the wrongful injuries and death of Mr. Mitchell, including special damages for his funeral and burial.

199. Mr. Mitchell endured physical and mental pain during the days leading up to his death, an item of damage that should be considered and awarded.

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them jointly and severally, for damages, including prejudgment interest, in a fair and reasonable sum in excess of $75,000.00, their costs incurred herein, punitive damages, and for such other relief as is deemed appropriate by the Court.

**COUNT V**

**Unconstitutional Pattern, Practice, and/or Custom, Cognizable Under 42 U.S.C, § 1983**

***Against Defendant St. Louis County***

200. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

201. As described herein, Defendants John and Jane Doe Correctional Officers and Staff, while acting under color of state law and alone and in concert with others, deprived Mr. Mitchell of his rights, privileges, and immunities as secured by the Constitution of the United States of America, including but not limited to unlawfully failing to provide him with adequate medical care and attention despite his serious and obvious need for such care and attention.

202. The misconduct of the individually-named Defendants and Defendants John and Jane Doe Correctional Officers and Staff, as described herein, was authorized by and undertaken

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

pursuant to a practice and custom that what so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants St. Louis County in that it is and was it was the regular pattern, practice and custom to not require inmates to stand for standing counts and/or "sign of life" checks, among other things.

203. More specifically, Defendant St. Louis County's inadequate policies, procedures, custom, practices and actions – as well as their inadequate training and supervision permitted failures, including but not limited to: failures to send patients presenting with severe symptoms to the hospital and infirmary, failures to train, supervise and discipline personnel for violating standing count policies and policies requiring the taking of vital signs and blood pressure, failures to implement policies and/or supervise personnel responsible for checking and monitoring the functionality of life-saving emergency equipment in the infirmary, which, as a result, malfunctioned or otherwise did not work when Mr. Mitchell needed them, failed to train personnel related to how and when to perform CPR on patients in Mr. Mitchell's condition, failed to ensure that professional medical judgment or care would be ordered by outside treating physicians in situations like Mr. Mitchells', delays or non-responses to noted urgent conditions, delegating clinical determinations to nursing personnel who are neither qualified nor licensed to independently make such determinations, failures to provide continuity of care by not documenting clinical observations, not properly diagnosing, and not providing adequate treatment; failures to provide pretrial detainees with qualified medical opinions rendered by on-site or off-site physicians; failures to deal with staffing shortages to ensure that patients receive the proper observation commensurate with their symptoms.

204. All of the above failures amounted to unconstitutional customs and practices of the jail by Defendant St. Louis County.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

205. The misconduct of the individually-named Defendants and Defendants John and Jane Doe Correctional Officers and Staff, as described herein, was authorized by and undertaken pursuant to a practice and custom that what so widespread, well-known, and well-settled, as to constitute a standard operating procedure of Defendants St. Louis County, in that it is and was it was the regular pattern, practice and custom to prohibit and preclude correctional officers and staff from adequately treatments patients for the reasons stated above.

206. The serious harms incurred by Mr. Mitchell were the direct consequence of this pattern, practice, and/or custom of Defendants St. Louis County.

207. As a direct and proximate consequence of the acts of Defendants St. Louis County, Mr. Mitchell has suffered damages in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and loss of life.

208. As the result of the actions of the individually named Defendants, Defendants John and Jane Doe Correctional Officers and Staff, and Defendant St. Louis County, Mr. Mitchell has suffered in the form of, *inter alia*, deprivation of his constitutional rights as guaranteed under the Eighth and Fourteenth Amendments, cognizable pursuant to 42 U.S.C. § 1983; physical pain and suffering; severe anxiety, fear, and mental anguish; and loss of life.

209. As a result of Defendant. Louis County's unlawful actions and infringements of his protected rights, Plaintiff Warren, on behalf of decedent Mr. Mitchell, has been compelled to retain counsel in this matter and is therefore entitled to a recovery of attorneys' fees and legal costs pursuant to 42 U.S.C. § 1988.

WHEREFORE, Plaintiff prays for judgement against Defendants, and each of them jointly and severally, for damages, including prejudgment interest, in a fair and reasonable

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

sum in excess of $75,000.00, their costs incurred herein, punitive damages, and for such other relief as is deemed appropriate by the Court.

**COUNT VI**

**Medical Negligence**

***Against Defendants Banasco, Doucette, Parker, Heitman, Howard, Reynolds, Cora, St. Louis County, John and Jane Does***

210. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

211. A patient-physician relationship existed between (i) Defendant Doucette (as Plaintiff's physician and/or the Director of Public Health) and Defendants Parker, Heitman, Reynolds, Howard, Cora, and certain John and Jane Does (as Plaintiff's nurses and/or jail medical staff) and Plaintiff (ii) these Defendants owed Plaintiff a duty to provide medical care by using the degree of skill and learning ordinarily used under the same or similar circumstances by members of the medical profession while Plaintiff was an inmate at the Buzz -Westfall Justice Center.

212. Defendant Doucette was responsible for overseeing, reviewing, and tacitly approving and/or authorizing the care that was provided to Plaintiff or that should be provided to Plaintiff, and therefore owed a legal duty to protect Plaintiff from injury.

213. At minimum, Defendant Doucette is vicariously liable for Defendants Parker, Heitman, Howard, Cora, and certain John Doe's conduct that caused Plaintiff's injuries including, but not limited to, the failure to diagnose Mr. Mitchell's medical need and/or provide him with appropriate medical care.

214. Defendants Doucette, Parker, Heitman, Howard, Cora, St. Louis County, and Banasco and John Does breached their duties – on multiple occasions and in multiple ways – and were therefore negligent in the following ways, including:

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

a. failing to provide professional medical judgment and care that would be ordered by outside treating physicians

b. failing to properly monitor Mr. Mitchell's blood pressure;

c. failing to properly report and record symptoms, new symptoms, and/or the increasing of severity of symptoms to the necessary provider, including inability to walk and stand, unsteady gait, inability to talk, slurred speech, dehydration, vomiting, and pain;

d. failure to immediately transfer Mr. Mitchell to the infirmary but instead delaying his transfer for several hours without reason or excuse;

e. failing to properly treat Mr. Mitchell for dehydration;

f. failing to properly control and treat Mr. Mitchell's hypertension;

g. failing to immediately and properly call for EMS in a timely manner and when required by professional standards;

h. failing to perform CPR and/or to clear airways;

i. failing to respond appropriately to emergency and/or urgent situation; and

j. failing to properly monitor, test, check, and maintain emergency medical equipment for proper function.

k. failing to transport Mr. Mitchell immediately to the hospital when he presented with an unsteady gait and slurred speech.

215. As a direct and proximate cause of Defendants Doucette, Parker, Heitman, Howard, Cora, Banasco and St. Louis County and John Doe's negligence, Mr. Mitchell's diagnosis and treatment was severely delayed and denied which caused him to suffer severe physical pain and emotional distress and death.

216. Defendants Doucette, Parker, Heitman, Howard, Cora, and John Does—as licensed medical professionals — should have realized that his aforementioned conduct of failing to provide adequate medical care to Mr. Mitchell, failing to permit Mr. Mitchell to receive medical

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

care from outside medical providers, and allowing Mr. Mitchell to suffer extreme and debilitating pain relating to his medical condition, which involved an unreasonable risk of causing distress.

217. Indeed, the emotional distress or medical injury suffered by Mr. Mitchell, as the result of Defendants' conduct is medically diagnosable and/or is medically significant.

218. Plaintiff is entitled to recover all applicable damages including, but not limited to, damages related to pain and suffering, mental anguish, disfigurement, loss of capacity to enjoy life, loss of consortium, attorney's fees, and physical impairment.

219. Indeed, the emotional distress or mental injury suffered by Mr. Mitchell, as a result of Defendants' conduct, is and/or was medically diagnosable and is of sufficient severity to be medically sufficient.

220. Plaintiff is entitled to recover all applicable damages including, but not limited to, damages related to pain and suffering, mental anguish, disfigurement, loss of capacity to enjoy life, loss of consortium, attorney's fees, and physical impairment.

221. Defendant Doucette, Banasco, Parker, Heitman, Howard, Cora, and John and Jane Does acts and omissions were intentionally willful, wanton, reckless, and malicious and evince a complete and a conscious and reckless disregard of the rights of Plaintiff. Therefore, Plaintiff is entitled to an award of punitive or exemplary damages in an amount sufficient punish defendants and to deter others from like conduct in the future.

WHEREFORE, Plaintiff Juan Mitchell, on behalf of decedent Mr. Mitchell, respectfully prays that this Honorable Court enter judgement in her favor and Defendants award her compensatory damages; punitive damages and award his reasonable costs and attorneys' fees; and grant him any and all such other relief as this Court deems just and proper.

**Count VIII**

**Negligence**

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

***Against St. Louis County***

222. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

223. Defendant St. Louis County had a duty to ensure that the medical equipment in the Buzz Westfall Justice Center was operational, well-maintained, functionable, and/or functioning.

224. Defendant St. Louis County's medical equipment, including but not limited to its oxygen takes and the automatic re-breather and suction machine, were not operational, well-maintained, functionable, and/or functioning.

225. Defendant St. Louis County's jail medical staff had an obligation to ensure that the medical equipment, including but not limited to oxygen tanks, rebreather, and suction machine were operational, well-maintained, functionable, and/or functioning.

226. Defendant St. Louis County's jail staff failed to ensure that the medical equipment, including but not limited to oxygen tanks and the automatic breather/automatic CPR machine, were operational, well-maintained, functionable, and/or functioning.

227. As the result of Defendant St. Louis County's medical equipment, including oxygen tanks and/or automatic breather/automatic CPR machine, being not operational, well-maintained, functionable, and/or functioning, Defendant St. Louis County's medical equipment was in a dangerous condition at the time of Mr. Mitchell's injuries.

228. Mr. Mitchell's injuries were directly and/or proximately caused by the dangerous condition of Defendant St. Louis County's property.

WHEREFORE, Plaintiff Juan Mitchell, on behalf of decedent Mr. Mitchell, respectfully prays that this Honorable Court enter judgement in her favor and Defendants St. Louis County; award her compensatory damages; award her reasonable costs and attorneys' fees; and grant her any and all such other relief as this Court deems just and proper.

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

**INJURIES AND DAMAGES**

229. Plaintiff hereby incorporates by reference all the allegations made in each preceding paragraph as if each were set forth herein.

230. As a direct and proximate result of the negligent actions of the Defendants, decedent Mr. Mitchell suffered personal injury, pain and suffering, and mental anguish prior to his death. As a direct result of the negligent actions of the Defendants, Mr. Mitchell suffered a poor quality of life in the days preceding his death. Defendants' negligence and deliberate indifference directly contributed to the personal injury, pain and suffering, and mental anguish experienced by Mr. Mitchell.

231. As a direct and proximate result of the Defendants' negligence and deliberate indifference, Plaintiff was deprived of decedent's valuable services, companionship, comfort, consortium, instruction, guidance, counsel, training, support, brotherly love, and affection. Additionally, decent suffered great physical pain and mental anguish through the time period of the Defendants' negligence deliberate indifference to his serious medical needs to his death.

232. As a direct and proximate result of the Defendants' negligence and deliberate indifference in treating Mr. Mitchell's serious medical condition, Mr. Mitchell suffered loss of life. This also deprived him of future enjoyment of life and income.

233. Plaintiff is entitled to recover punitive damages from the Defendants for their intentional, willful, and malicious acts and/or omissions which constituted gross negligence, recklessness, and deliberate indifference to Mr. Mitchell's medical needs in violation of his civil rights pursuant to 42 U.S.C. § 1983.

**DEMAND FOR JURY TRIAL**

Electronically Filed - St Louis County - January 11, 2023 - 08:23 PM

Plaintiff hereby demands trial by jury on all of the above issues, costs herein incurred, fees where appropriate, and such relief as is deemed appropriate for the Court.

Dated: January 11, 2023

Respectfully submitted,

***PEDROLI LAW, LLC***

Mark J. Pedroli, MBE 50787
***PEDROLI LAW, LLC***
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314-789.7400 Fax
Mark@PedroliLaw.com