IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JUAN MITCHELL, Individually and on behalf of JOVON MITCHELL, deceased | ) | |
| Plaintiff, | ) | |
| v. | ) | 4:23-cv-00223-MTS |
| ST. LOUIS COUNTY, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT DOUCETTE'S MOTION TO DISMISS COUNT IV OF PLAINTIFF'S THIRD AMENDED COMPLAINT**

COMES NOW Plaintiff Juan Mitchell and files this Memorandum in Opposition to Defendant Doucette's Motion to Dismiss Count IV of Plaintiff's Third Amended Complaint ("*TAC*").

## INTRODUCTION

This action arises from the death of Jovon Mitchell, a detainee at the St. Louis County Buzz Westfall Justice Center at the time of his death on December 25, 2019. TAC ¶¶1, 22, 25-26. Defendant Doucette moves to dismiss Count IV for medical negligence.

## STATEMENT OF FACTS

On December 23–25, 2019, Jovon Mitchell was a pretrial detainee housed at the St. Louis County Buzz Westfall Justice Center. TAC ¶¶ 1, 22, 25–26. Mr. Mitchell began exhibiting obvious symptoms of a neurological emergency including vomiting, severe headache, dizziness, inability to walk, slurred speech, and inability to stand. TAC ¶¶ 25–31, 39–41, 59, 61, 63, 70, 74–77, 85, 92. Despite these escalating symptoms, correctional and medical staff repeatedly failed to send Mr. Mitchell to the hospital or provide appropriate treatment. TAC ¶¶ 42, 64, 66, 71, 73, 78–79, 87, 93, 95–100, 133–144.

Defendant Doucette, the Director of the St. Louis County Department of Public Health, created and signed the standing medical orders governing treatment of detainees presenting with serious symptoms and delegated medical decision-making authority to jail nurses pursuant to those orders. TAC ¶¶ 13, 168–170. As Director of the St. Louis County Department of Public Health and the physician responsible for executing the standing medical orders governing detainee care, Doucette exercised authority over the medical protocols used by jail nurses and delegated medical decision making authority to those nurses pursuant to those orders. TAC ¶¶ 13, 168–170. By promulgating those standing orders, Defendant Doucette assumed responsibility for ensuring that the orders were properly implemented and that nurses complied with the required protocols. TAC ¶¶ 171, 179.

Despite that responsibility, Defendant Doucette failed to supervise or audit whether nurses followed those standing orders, even though prior incidents had revealed failures to comply with those orders in the jail medical system. TAC ¶¶ 172, 174–178, 180. Defendant Doucette was aware that nurses in the jail had previously failed to follow standing medical orders in detainee medical emergencies, including incidents that resulted in detainee deaths, yet Doucette still failed to audit, review, or otherwise ensure compliance with her own medical orders. TAC ¶¶ 174–178. As a result of these failures, Mr. Mitchell's obvious stroke symptoms went untreated for hours. TAC ¶¶ 58–79, 85–100, 132–144. When Mitchell was finally discovered unconscious, critical life-saving equipment malfunctioned and no timely CPR was performed. TAC ¶¶ 102–118. Mr. Mitchell was later pronounced brain dead. TAC ¶¶ 119–125. These allegations form the basis of Plaintiff's medical negligence claim.

## LEGAL STANDARD

At this Motion to Dismiss stage, the Court accepts well-pleaded facts as true and draws reasonable inferences in Plaintiff's favor; the question is plausibility, not proof. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

First, Defendant Doucette's statute of limitations defense fails as medical negligence resulting in death is timely pursuant to Missouri's three-year wrongful death statute. Second, Missouri's official immunity doctrine does not shield physicians from liability for negligent medical treatment or supervision of clinical care. Third, Missouri law recognizes that a physician-patient relationship may arise where a physician directs or participates in patient treatment. Plaintiff's Third Amended Complaint alleges that Defendant Doucette created the standing medical orders governing detainee treatment and delegated medical authority to nursing staff pursuant to those orders. Fourth, Plaintiff's claim against Doucette is not based on vicarious liability but on her own negligent conduct. Finally, Plaintiff's Third Amended Complaint is both plausible and compliant with Rule 8 because Plaintiff specifically alleges Doucette's role in creating the standing orders, delegating medical authority, and failing to ensure compliance with those directives in the period leading to Mr. Mitchell's death. TAC ¶¶168–180. For these reasons, none of Defendant's arguments provides a basis for dismissal under Rule 12(b)(6).

### I. Plaintiff's Claim is Governed by Missouri's Wrongful Death Statute and is Timely

Missouri courts recognize that wrongful death claims arising from alleged medical negligence are governed by Missouri's wrongful death statute. See *Klotz v. St. Anthony's Med. Ctr.*, 359 S.W.3d 495 (Mo. App. E.D. 2011). Missouri law is clear that when negligence results in death, the governing cause of action is wrongful death, and the applicable limitations period is the three-year period set forth in §537.100 RSMo. The wrongful death statute creates an independent cause of action

belonging to the decedent's survivors, not the decedent. *O'Grady v. Brown*, 654 S.W.2d 904, 906 (Mo. banc 1983). Missouri courts have repeatedly held that the wrongful death statute governs even when the alleged negligence arises from medical treatment. Missouri courts recognize that wrongful death constitutes a distinct statutory action that accrues upon death and is subject to the three-year limitations period of §537.100. Plaintiff filed this action within the three-year period expressly set out by Missouri statute. Accordingly, the statute of limitations does not bar Plaintiff's claim, and dismissal under Rule 12(b)(6) is improper.

Even if the Court were to conclude that Count IV should be more explicitly styled as a wrongful death claim, dismissal would still be unwarranted. Plaintiff's Third Amended Complaint alleges that Mr. Mitchell died as a result of Defendants' negligent medical care and seeks damages arising from that death. TAC ¶¶162–165, 244–249. Missouri courts determine the nature of a claim by examining the substance of the pleaded facts rather than the label attached to a particular count. *Millard v. Corrado*, 14 S.W.3d 42, 48–49 (Mo. App. E.D. 1999). Courts determine the nature of a claim by examining the substance of the allegations rather than the label attached to the claim. See also, *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). Plaintiff's allegations of medical negligence resulting in death and, therefore, the claim falls within the Missouri wrongful death statute regardless of the caption.

However, if the Court were to conclude that Plaintiff's complaint should more clearly identify the medical negligence claim was timely filed pursuant to the Missouri wrongful death statute, the proper remedy should be leave to amend under Federal Rule of Civil Procedure 15, not dismissal. Amendment, *if needed*, would not change the facts or prejudice Defendant Doucette. Under Rule 15, amendment would relate back to the original filing date. Accordingly, dismissal on statute of limitations grounds would be improper.

## II. Defendant Doucette is Not Entitled to Official Immunity

Missouri courts have repeatedly refused to extend official immunity to physicians for negligent performance of medical duties. Official immunity protects discretionary governmental acts, not the negligent performance of ministerial or professional medical duties. *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). In *State ex rel. Twiehaus v. Adolf*, the Court made clear that official immunity does not protect the negligent performance of ministerial acts, explaining that immunity applies only to discretionary acts "requiring the exercise of reason in the adaptation of means to an end and discretion in determining how or whether an act should be done." 706 S.W.2d 443, 446 (Mo. banc 1986).

Missouri courts have expressly rejected the notion that *state-employed physicians* are shielded by official immunity merely because they are public employees. In *State ex rel. Eli Lilly & Co. v. Gaertner*, the Eastern District of Missouri addressed whether state-employed physicians were entitled to immunity and concluded: "..we find, as a result of the foregoing analysis that the defendant physicians are not public officials entitled to immunity but are employees subject to suit in which their liability for medical malpractice may or may not be established." 619 S.W.2d 761, 764 (Mo. App. E.D. 1981). The court went further and explained that even if physicians were considered public officers, their duties do not constitute protected discretionary acts in the legal sense: "The discretionary decisions, the protection of which is the purpose of the doctrine of official immunity, are those which are a manifest exercise of the sovereign's power — those decisions which 'go to the essence of governing.'" Id. at 765 (citation omitted). The performance of medical duties, including diagnosis, treatment, supervision of care, and implementation of medical protocols, does not constitute an exercise of sovereign governing power. Rather, such duties are professional and operational in nature, ministerial, not discretionary. Under *Gaertner*, state-employed physicians are not immune from claims of medical negligence simply by virtue of their public employment. Accordingly, Defendant Doucette's alleged conduct including promulgating and not enforcing or

supervising her standing medical orders falls within the realm of professional medical responsibility, not discretionary sovereign decision-making protected by official immunity.

The Eighth Circuit applied similar reasoning in *Letterman v. Doe*, 859 F.3d 1120 (8th Cir. 2017), which addressed Missouri official immunity in the context of correctional officers' failure to follow monitoring procedures for an inmate in medical distress. The Eighth Circuit held that correctional officers were not entitled to Missouri official immunity because the close observation policy at issue imposed ministerial duties. Id. at 1125–27. The policy required officers to check on an inmate at prescribed intervals and report a medical emergency if the inmate could not be roused or if movement could not be observed. Id. at 1126. The court rejected the argument that officers had discretion to decide whether a medical emergency "actually" existed, holding instead that the duty to report was mandatory once the specified conditions were present. Id. Because the policy prescribed a specific response to known facts and required no policymaking authority or professional judgment, the duties were ministerial. Id. at 1126–27.

Plaintiff's Third Amended Complaint alleges that Doucette executed standing orders to her nurses, making her personally responsible for the care of patients like Mitchell and for the supervision of her nurses enforcing or ignoring Doucette's orders, including requiring immediate doctor contact if a patient complained of the "worst headache of [his] life," TAC ¶60; that nursing staff failed to report Mr. Mitchell's worsening symptoms to a provider despite those orders, ¶66; that Defendants, including Doucette, failed to ensure functionality testing of critical emergency equipment before Mr. Mitchell's medical emergency, ¶114; and that Doucette by signing the standing orders, delegated medical acts through them, assumed responsibility for ensuring compliance, knew of prior failures to follow her orders, resulting in death of other detainees, and nevertheless failed to supervise, audit, or review their implementation, ¶¶168–180. Plaintiff also alleges that Doucette knew nurses had previously failed to follow these standing orders in prior detainee medical emergencies yet failed to

audit, supervise, or ensure compliance with those protocols. TAC ¶¶174–180.Plaintiff's allegations concern the day-to-day implementation of Doucette's orders to her nurses, supervision of those nurses, and enforcement of medical care protocols and, therefore, describe ministerial medical duties pursuant to *Gaertner*. Where specific facts trigger a mandatory response under established protocols, the resulting duty is ministerial rather than discretionary. See *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). Finally, official immunity determinations are often fact intensive and rarely appropriate for resolution on the pleadings. Id at 763.

## III. Defendant Doucette and Decedent had a Physician-Patient Relationship

Defendant Doucette argues no patient-physician relationship existed with Decedent Mitchell. To the contrary, Plaintiff alleges that Defendant Doucette created and signed standing medical orders governing treatment of detainees presenting with symptoms, including those presented by Mr. Mitchell. (TAC ¶ 171). Plaintiff further alleges that by signing these standing orders, Doucette became personally responsible for supervising nurses treating patients, including Mr. Mitchell. (TAC ¶ 171) and thus a physician-patient relationship with Mitchell, as her orders directly governed the treatment of Mitchell.

Missouri recognizes that a physician-patient relationship may arise where a physician undertakes responsibility for directing treatment, even without direct personal examination. See *Millard v. Corrado*, 14 S.W.3d 42, 49 (Mo. App. E.D. 1999) (relationship may arise where physician affirmatively participates in or directs care). Dismissal is improper where Plaintiff's Complaint alleges facts from which a duty is specifically alleged or may reasonably be inferred. *Iqbal*, 556 U.S. at 678.

## IV. Defendant Doucette's Vicarious Liability Argument Does Not Defeat Plaintiff's Count IV

Defendant Doucette's vicarious liability argument misconstrues Plaintiff's claim. Count IV does not rely solely on a theory that Doucette is liable for the negligence of nurses or other medical

staff. Rather, the Third Amended Complaint alleges that Doucette herself engaged in negligent conduct by creating and promulgating the standing medical orders governing detainee treatment, delegating medical decision-making authority to nursing staff pursuant to those orders, and failing to supervise or ensure compliance with those directives despite known prior failures to follow them. TAC ¶¶168–172, 174–180.

Whether Plaintiff can impose vicarious liability on Dr. Doucette is irrelevant. Plaintiff's Complaint alleges that Dr. Doucette is 'at minimum' vicariously liable, but Count IV is not limited to vicarious liability. TAC ¶¶ 235. Regardless, Count IV survives because it pleads Doucette's own acts and omissions by incorporating the preceding allegations, including the specific factual allegations that Defendant Doucette created and signed the standing orders, delegated medical acts through those orders, assumed responsibility for ensuring compliance, knew of prior fatal failures to follow those orders, and failed to supervise, audit, or review their implementation. TAC ¶¶ 168–180.

Additionally, Defendant's reliance on *Burns v. Owens* is misplaced. Plaintiff's Third Amended Complaint alleges that Dr. Doucette *herself created and signed* the standing medical orders governing detainee care, delegated medical acts through those orders, assumed responsibility for ensuring compliance with them, knew of prior fatal failures to follow them, and nevertheless failed to supervise, audit, or review their implementation before Mr. Mitchell's death. TAC ¶¶ 168–180. Count IV survives because Plaintiff alleges Dr. Doucette's own direct negligence, not merely vicarious liability.

Missouri law recognizes that a physician may be liable for his or her own negligent supervision, direction, or delegation of medical care. See *Millard v. Corrado*, 14 S.W.3d 42, 49 (Mo. App. E.D. 1999) (physician-patient relationship may arise where physician directs or participates in treatment decisions). Because Plaintiff's Complaint alleges that Doucette directed Mitchell's care pursuant to her orders (TAC ¶¶168–171) Plaintiff has plausibly alleged Doucette's direct

involvement in the medical care at issue. Plaintiff's Complaint alleges far more that Doucette acting in a distant administrative role, instead, she created the standing orders which directed the treatment of Mitchell, delegated medical acts through them, and assumed responsibility for Mitchell's care. Plaintiff's allegations are sufficient for Plaintiff to plausibly plead duty at this stage of the proceedings.

## V. Plaintiff's Medical Negligence Claim is Compliant with the Federal Rules of Civil Procedure

Defendant Doucette's assertion that Count IV impermissibly "lumps" defendants together ignores Plaintiff's specific allegations directed at Defendant Doucette throughout Plaintiff's Third Amended Complaint: that Doucette created and signed the standing medical orders governing treatment of detainees (TAC ¶168), delegated medical authority to nurses through those standing orders (¶169), and defined those standing orders as directives instructing nurses how to respond to detainee symptoms (¶170), and that by issuing those orders Doucette became responsible for supervising and ensuring that nurses complied with them (¶171), yet Doucette was negligent in failing to supervise her own orders (¶172). Plaintiff's Complaint also alleges that Doucette knew nurses had previously failed to follow standing orders resulting in death (¶176) and nevertheless failed to audit, review, or otherwise ensure compliance with her own orders before Mr. Mitchell died (¶174–175, ¶180). These allegations easily satisfy Rule 8's requirement of a short and plain statement showing entitlement to relief and are, at minimum, plausible at this stage of the proceedings.

## CONCLUSION

Plaintiff respectfully requests that this Honorable Court deny Defendant Doucette's Motion to Dismiss Count IV of Plaintiff's *Third Amended Complaint*. To the extent the Court determines

that further clarification or amendment is necessary, Plaintiff respectfully requests leave to amend his complaint as justice requires.

Dated: March 16, 2026

Respectfully submitted,

Mark J. Pedroli, MBE 50787
***PEDROLI LAW, LLC***
7777 Bonhomme Ave, Suite 2100
Clayton, Missouri 63105
314.669.1817
314.785.7400 Fax
Mark@PedroliLaw.com

## **Certificate of Service**

The undersigned hereby certifies that on the above date, a true and accurate copy of the foregoing was filed with the Clerk of this Court through the Court's electronic filing system and thereby served on all counsel of record for the parties.

/s/ Mark Pedroli