**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUAN MITCHELL, *individually and on behalf of Jo'von Mitchell, deceased*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-00223-MTS |
| | ) | |
| SAINT LOUIS COUNTY, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court on Defendants Katie Cora, Connie Heitman, Shyla Howard, Todd Parker, and Vicki Reynolds's Motion to Dismiss Counts IV and V, Doc. [107], and Defendant Emily Doucette's Motion to Dismiss Count IV, Doc. [109]. Because Count IV is barred by the statute of limitations, and because Defendants Cora, Parker, Reynolds, and Doucette are entitled to official immunity from suit, this Court will grant the Motions as to those Defendants. However, because Plaintiff states a claim against Defendants Heitman and Howard, the Court will deny the Motion as to those Defendants.

## I. Factual Background

For purposes of Defendants' Motions to Dismiss, the Court accepts all factual allegations in Plaintiff's Third Amended Complaint as true. *See Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989); *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014).

Plaintiff Juan Mitchell ("Plaintiff") is the brother of the late Jo'von Mitchell ("Decedent"), a pre-trial detainee at the Buzz Westfall Justice Center who died in St. Louis County custody on December 27, 2019. Doc. [36] ¶¶ 11, 12, 22, 125. At the time of Decedent's

death, Defendant Doucette served as the acting Director or Co-director of the St. Louis County Department of Public Health, and Defendants Parker, Heitman, Reynolds, Howard, and Cora worked in the St. Louis County Justice Center as a Physician Assistant and as nurses, respectively. *Id.* ¶¶ 13, 16–20.

The tragic events causing Decedent's death began on December 23, when Decedent started suffering from a stroke. *Id.* ¶ 25. At 4:05 a.m. on Christmas Day, Decedent pressed the emergency call button in his cell and told unit control he had the "worst headache of his life." *Id.* ¶¶ 58–59. Defendant Heitman arrived in Decedent's cell and recorded his symptoms, but did not send Decedent to the infirmary or call a doctor, despite a standing order requiring nurses to contact a doctor if an inmate reports the "worst headache of his life." *Id.* ¶¶ 60, 63–64, 66. Heitman also violated jail policy and standing orders by not taking Decedent's blood pressure, and when Decedent's roommate expressed concerns, Heitman summarily dismissed him. *Id.* ¶¶ 67, 69. The roommate believes that Heitman refused to treat Decedent because she was angry about waking up at 4:00 in the morning. *Id.* ¶ 68.

At 6:00 a.m., Decedent pushed the emergency button again, but Heitman told other staff that Decedent "would have to wait for the morning nurse." *Id.* ¶¶ 72–73. When Decedent finally saw the nurse, Defendant Reynolds, she once again recorded his symptoms but delayed sending him to the infirmary to make sure he was not "malingering." *Id.* ¶¶ 77–79. At around 10:30 a.m., Defendant Parker ordered Reynolds to send Decedent to the infirmary, but Reynolds did not do so until around 12:41 p.m. *Id.* ¶¶ 86–90.

When Decedent arrived at the infirmary, Defendant Howard recorded his symptoms but "did not call 911 and did not escalate his care." *Id.* ¶¶ 92–93. Parker ordered Howard to conduct orthostatic blood pressure tests and either observe Decedent's fluid intake or put him

on an IV. *Id.* ¶¶ 94, 96. Howard began the blood pressure tests at 1:16 p.m. but did not monitor Decedent's fluid intake or put him on an IV. *Id.* ¶¶ 97–99. In fact, Howard left Decedent alone in his cell. *Id.* ¶ 99.

By 5:14 p.m., Decedent had become unresponsive, and when Defendant Cora found him unconscious in his cell, she called a "Code 1." *Id.* ¶¶ 102, 105–6. Cora did not, however, call 911 until several minutes later because of a policy at the jail discouraging nurses from calling 911 to avoid emergency room costs. *Id.* ¶¶ 108–10. Cora tried to use the facility's suction equipment, rebreather, and oxygen tank to revive Decedent, but the equipment "malfunctioned" because Defendant Doucette had failed to periodically test it. *Id.* ¶¶ 112–14. By the time Decedent reached the hospital, doctors discovered a 3-centimeter mass of blood in his head. *Id.* ¶ 123. The condition was irreparable, and Decedent died on December 27. *Id.* ¶¶ 125–26.

Plaintiff brought this suit on December 25, 2022, against St. Louis County and several staff members at the Justice Center; Defendants removed the case to this Court on February 23, 2023. Doc. [1] at 24–36. Plaintiff's Third Amended Complaint brings several claims under state and federal law, including Failure to Provide Adequate Medical Care under 42 U.S.C. § 1983 against Defendants Heitman, Reynolds, and Howard ("Count I"), Failure to Train, Supervise, and Discipline under 42 U.S.C. § 1983 against Defendants St. Louis County, Doucette, and Parker ("Count II"), Medical Negligence against Defendants Doucette, Parker, Heitman, Howard, Reynolds, and Cora ("Count IV") and Wrongful Death against Defendants Parker, Heitman, Reynolds, Howard, and Cora ("Count V"). Doc. [36] ¶¶ 197–220, 232–49. This Court dismissed all federal law claims for failure to state a claim under Rule 8, and with the federal claims gone, the Court declined to exercise supplemental jurisdiction over the state

law claims. Doc. [81] at 15. Plaintiff appealed, and on December 4, 2025, the United States Court of Appeals for the Eighth Circuit affirmed in part but reversed and remanded as to Heitman, Reynolds, and Howard on Count I, and St. Louis County on Count II. *Mitchell v. St. Louis County*, 160 F.4th 950, 964 (8th Cir. 2025). Additionally, with a federal claim resurrected, the Eighth Circuit ordered this Court to exercise supplemental jurisdiction over the state law claims. *Id.*

Defendants Cora, Heitman, Howard, Parker, Reynolds, and Doucette now bring motions to dismiss Counts IV and V. Doc. [107]; Doc. [109].

## II. Legal Standard

### a. Rule 12(b)(6) Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The purpose of such a motion is to test the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the Court assumes a complaint's factual allegations are true and makes all reasonable inferences in favor of the nonmoving party, but the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). To survive a motion to dismiss, the complaint must allege facts supporting each element of the plaintiff's claims, and the claims cannot rest on mere speculation. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The complaint "must allege more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements'" and instead must "allege sufficient facts

that, taken as true, 'state a claim to relief that is plausible on its face.'" *K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1057 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility of a complaint turns on whether the facts alleged allow a court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Lustgraaf v. Behrens*, 619 F.3d 867, 873 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

b. Official Immunity

Official immunity is a Missouri judicial doctrine that "protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *Southers v. City of Farmington*, 263 S.W.3d 603, 610 (Mo. banc 2008). Official immunity exists "to allow public officials to make judgments affecting the public safety and welfare without the fear of personal liability," and as a result should be broadly applied. *Davis v. Buchanan Cnty.*, 11 F.4th 604, 629 (8th Cir. 2021) (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019)).

Official immunity has two narrow exceptions. First, official immunity does not apply "when a public officer fails to perform a ministerial duty required of him by law." *Davis*, 11 F.4th at 629 (quoting *State ex rel. Helms v. Rathert*, 624 S.W.3d 159, 163 (Mo. banc 2021)). Whether a duty is ministerial "depends on the degree of reason and judgment required."

*Southers*, 263 S.W.3d at 610. A ministerial duty is one "of a clerical nature which a public officer is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed." *Id.* (quoting *Kanagawa v. State ex rel. Freeman*, 685 S.W.2d 831, 836 (Mo. banc 1985)). If "there is any room whatsoever for variation in when and how a particular task can be done," the task is not ministerial, but discretionary. *Davis*, 11 F.4th at 629 (quoting *Helms*, 624 S.W.3d at 163). Sources of a ministerial duty can include statutes, regulations, departmental rules, orders of a superior, or even the nature of the public employee's position. *Stephens v. Dunn*, 453 S.W.3d 241, 251 n.13 (Mo. Ct. App. 2014) (quoting *Nguyen v. Grain Valley R-5 Sch. Dist.*, 353 S.W.3d 725, 730 (Mo. Ct. App. 2011)). Courts must determine the discretionary or ministerial nature of a duty "on a case-by-case basis, considering: (1) the nature of the public employee's duties; (2) the extent to which the act involves policymaking or exercise of professional judgment; and (3) the consequences of not applying official immunity." *Southers*, 263 S.W.3d at 610.

Second, official immunity does not apply "if the [public employee's] conduct is willfully wrong or done with malice or corruption." *Id.* This bad faith/malice exception usually requires "actual intent to cause injury" on the part of the defendant. *State ex rel. Love v. Cunningham*, 689 S.W.3d 489, 496 (Mo. banc 2024) (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986)).

## III. Analysis

Defendants raise six grounds for dismissal: qualified immunity, Mo. Rev. Stat. § 538.210's exclusivity provision, the public duty doctrine, the statute of limitations, official immunity, and failure to state a claim on which relief can be granted.

a. Qualified immunity

Defendants Cora, Heitman, Howard, Parker, and Reynolds argue that they are entitled to qualified immunity on Counts IV and V. Doc. [108] at 3. However, Counts IV and V are Missouri state law claims, and "federal qualified immunity does not apply to state-law claims." *Tuttle v. Sepolio*, 68 F.4th 969, 976 (5th Cir. 2023); *see also Herts v. Smith*, 345 F.3d 581, 588 (8th Cir. 2003) ("We are not aware of any authority that applies [qualified immunity] to state-law claims."). Therefore, this argument is meritless.

b. Mo. Rev. Stat. § 538.210.1's exclusivity provision

Cora, Heitman, Howard, Parker, and Reynolds also argue that Count V must be dismissed because Plaintiff did not plead it under Mo. Rev. Stat. § 538.210.1 (2020), the exclusive cause of action under Missouri law for wrongful death against health care providers. Doc. [108] at 6. This argument is also meritless. "The Federal Rules of Civil Procedure do not require a plaintiff to allege legal theories." *Sargeant v. Barfield*, 87 F.4th 358, 361 (7th Cir. 2023); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) ("[The Federal Rules] do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."); *Topchain v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) ("The well-pleaded facts alleged in the complaint, not the legal theories of recovery . . . must be viewed . . . .") (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 286 F.3d 1051, 1057–58 (8th Cir. 2002)) (internal quotations omitted). In evaluating a motion to dismiss, "[w]hat matters is whether the raw materials of [the] complaint—the facts—plausibly suggest[]" a

cause of action. *Sargeant*, 87 F.4th at 361.[1] The mere fact that Plaintiff did not invoke § 538.210.1 is not dispositive.

c. Public Duty Doctrine

Cora, Heitman, Howard, Parker, and Reynolds also invoke the Missouri public duty doctrine to shield them from liability, but this argument also fails. "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual." *Doe v. Meritas Health Corp.*, 732 S.W.3d 207, 221 (Mo. Ct. App. 2026) (quoting *Southers*, 263 S.W.3d at 611). However, courts have repeatedly held that the public duty doctrine does not apply to breaches of duty by a medical professional treating a patient. *See Doe*, 732 S.W.3d at 222 ("[T]he public duty doctrine is inapplicable where a hospital is alleged to have violated duties owed to patients[.]"); *Geiger v. Bowersox*, 974 S.W.2d 513, 517 (Mo. Ct. App. 1998) (finding the public duty inapplicable to a prison nurse's negligence in filling patient prescriptions); *Johnson v. Neiman*, 4:09-cv-0689-JCH, 2009 WL 5176652, at *6 (E.D. Mo. Dec. 22, 2009) (holding that public duty doctrine does not apply because "the [d]efendants are being sued related to the medical care they provided [the] [p]laintiff, not their public, law enforcement duties"); *cf. Rodgers v. City of North Kan. City*, 340 S.W.3d 154, 160 (Mo. Ct. App. 2011) (finding that public duty doctrine applies because the plaintiff could not show that any defendants were personally involved in her healthcare).

[1] These same authorities refute Defendants' arguments that Counts IV and V fail to state a claim because Plaintiff does not make specific allegations against Defendants in the "Count" section of the Complaint. Doc. [108] at 4–7; Doc. [110] at 6. Since no legal theory is even required in a complaint, *see Sargeant*, 87 F.4th at 361, what matters for this Court is whether Plaintiff states sufficient facts—anywhere in the complaint—to state a claim on which relief can be granted.

Here, Cora, Heitman, Howard, Parker, and Reynolds were all medical professionals at the Justice Center, and each was personally involved in Decedent's medical care. Doc. [36] ¶¶ 16–20, 66–70, 83–87, 93–98, 105–109. Therefore, since the Third Amended Complaint alleges breach of Defendants' duties toward Decedent, not their duty to the general public, the public duty doctrine does not bar suit.

d. Statute of Limitations

The Court is now left with three potentially meritorious defenses: the statute of limitations, official immunity, and failure to state a claim. The Court first addresses the statute of limitations.

Defendant Doucette alleges that Plaintiff's medical negligence claim is barred by the two-year statute of limitations for medical negligence cases, Mo. Rev. Stat. § 516.105 (2018). Doc. [110] at 2–3. While Doucette is correct that the normal statute of limitations for medical negligence is two years, a separate Missouri statute, Mo. Rev. Stat. § 537.100 (2018), establishes a three-year statute of limitations for any wrongful death case. In circumstances where the medical negligence and wrongful death statutes of limitations conflict, Missouri courts are clear that "the longer, three[-]year statute of limitations applies." *Wilson v. Jackson*, 823 S.W.2d 512, 513 (Mo. Ct. App. 1992).

Plaintiff brings Count IV as a claim for "medical negligence" and Count V as a claim for "wrongful death." Doc. [36] ¶¶ 232–249. Therefore, this Court finds that, to the degree Plaintiff is attempting to bring a medical negligence action alone in Count IV, the two-year statute of limitations applies; however, the three-year statute of limitations applies to Count V as a wrongful death action based on medical negligence. *See Burns v. Firman Power Equip., Inc.*, 4:25-cv-0442-MTS, 2026 WL 820425, at *2 n.3 (E.D. Mo. Mar. 25, 2026).

Plaintiff's medical negligence and wrongful death actions accrued, at the latest, on December 27, 2019, the day his brother died. Mo. Rev. Stat. § 516.105.1 (2018) (establishing that any medical negligence action shall be brought "within two years from the date of occurrence of the act of neglect complained of . . ."); *State ex rel. Goldsworthy v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. banc 2018) ("A wrongful death cause of action accrues at the moment of death."); Doc. [36] ¶ 125. Plaintiff filed his petition in state court on December 25, 2022, outside of the two-year statute of limitations but within the three-year statute. Doc. [1] at 1. Therefore, this Court finds that Count IV warrants dismissal as to Defendant Doucette on statute of limitations grounds, but Count V is still timely.[2]

e. Official Immunity

The Court will next address official immunity. At the outset, the parties disagree on the standard for official immunity for medical professionals. Plaintiff cites *State ex rel. Eli Lilly & Co. v. Gaertner* for the proposition that medical decisions are categorically exempt from official immunity because said decisions do not "go to the essence of governing." Doc. [113] at 7 (citing *State ex rel. Eli Lilly & Co. v. Gaertner*, 619 S.W.2d 761, 765 (Mo. Ct. App. 1981)). However, the Supreme Court of Missouri declined to adopt *Gaertner*'s "essence of governing" standard in *Laughlin v. Perry*, and subsequent decisions by the Missouri Court of Appeals replaced the "essence of governing" standard with a "true emergency" standard, in which medical professionals receive official immunity when acting in a "true emergency."[3] *Laughlin*

[2] Since Defendant Doucette is named only in Count IV, not Count V, the Court need not conduct an official immunity or failure to state a claim analysis as to her. Doc. [36] ¶¶ 232–249. However, the Court will still analyze official immunity as to Doucette *arguendo*.

[3] This is not the only time that Plaintiff's counsel has provided misleading and/or inaccurate case citations. In fact, this Court notes at least five occasions in Docs. [112] and [113] where Plaintiff's counsel provides false and inaccurate citations:

*v. Perry*, 604 S.W.3d 621, 627 (Mo. banc 2020); *Kemp v. McReynolds*, 621 S.W.3d 644, 656 (Mo. Ct. App. 2021) (quoting *Thomas v. Brandt*, 325 S.W.3d 481, 484 (Mo. Ct. App. 2010)).

At any rate, a federal court applying state law is not bound by decisions of a state intermediate court of appeals. *Owners Ins. Co. v. Hughes*, 712 F.3d 392, 393 (8th Cir. 2013) ("Decisions by the Missouri Court of Appeals may be used as an indication of how the Missouri Supreme Court may rule, but [a federal court is] not bound to follow these decisions.") (quoting *Aerotronics, Inc. v. Pneumo Abex Corp.*, 62 F.3d 1053, 1068 (8th Cir. 1995)). Moreover, the Eighth Circuit has applied official immunity to medical professionals without reference to either the "essence of governing" or "true emergency" standards. *See B.A.B., Jr. v. Bd. of Educ. of City of St. Louis*, 698 F.3d 1037, 1042 (8th Cir. 2012) (noting in dicta that a school nurse would be entitled to official immunity if sued in an individual capacity for negligence, without referencing either Missouri Court of Appeals standard). Because of

---

a. In both documents, Plaintiff cites "*Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760 (Mo. banc 2006)" for the proposition that "official immunity declarations are often fact intensive and rarely appropriate for resolution on the pleadings," but *Davis* never discusses pleadings at all. Doc. [112] at 7; Doc. [113] at 6.

b. In Doc. [113], Plaintiff cites a case he claims to be "*Letterman v. Does*, 859 S.W.2d 746, 750 (Mo. App. E.D. 1993)." Doc. [113] at 7. *Letterman v. Does* is a real case, but it is from the Eighth Circuit, and its proper citation is 859 F.3d 1120 (8th Cir. 2017). In fact, Plaintiff cites *Letterman* correctly in Doc. [112] at 6.

c. In Doc. [112], Plaintiff cites what he claims to be "*Klotz v. St. Anthony's Med. Ctr.*, 359 S.W.3d 495 (Mo. App. E.D. 2011)," but *Klotz*'s true citation is 311 S.W.3d 752 (Mo. banc 2010). Doc. [112] at 3.

d. Finally, in Doc. [112], Plaintiff cites "*Millard v. Corrado*, 14 S.W.3d 42, 48–49 (Mo. App. E.D. 1999)," for the proposition that "Missouri courts determine the nature of a claim by examining the substance of the pleaded facts rather than the label attached to a particular count," but *Millard* does not support this proposition anywhere. Doc. [112] at 4. What is more, it is unclear why the proposition was even included in the first place. *See Christopherson v. Bushner*, 33 F.4th 495, 499–500 (8th Cir. 2022) (noting that federal courts apply federal pleading standards to the state substantive law to determine if a complaint makes out a claim under state law).

These errors bear the hallmarks of artificial intelligence hallucinations. If this Court finds similar errors in a future brief, the Court may resort to sanctions under Federal Rule of Civil Procedure 11(b). *See Mills v. City of St. Louis*, 4:25-cv-1219-MTS, 2026 WL 251781, at *1 (E.D. Mo. Jan. 30, 2026), *aff'd*, No. 26-1236, 2026 WL 2410312 (8th Cir. Aug. 18, 2026) (per curiam).

this silence from the Eighth Circuit and Supreme Court of Missouri (as well as the fact that the parties did not brief the "true emergency" standard), this Court will apply the standard official immunity analysis.

Under this analysis, all six defendants are entitled to official immunity unless they violated a ministerial duty or acted with bad faith/malice. *Davis*, 11 F.4th at 629 (quoting *State ex rel. Helms*, 624 S.W.3d at 163); *Southers*, 263 S.W.3d at 610.[4]

Plaintiff's brief notes numerous paragraphs in the Third Amended Complaint that he claims establish ministerial duties. Doc. [112] at 5–7; Doc. [113] at 7–8. This Court analyzes each in turn.

A. Paragraph 60 of the Complaint states that "Corrections Medicine ha[d] a standing order signed by Defendant Doucette that states if the patient complains of the 'worst headache of their life', a doctor is to be contacted immediately." Doc. [36] ¶ 60. Decedent complained of exactly that when he pressed the emergency control button in his cell at 4:05 a.m. on December 25, 2019. *Id.*

---

[4] Like some courts before them, the parties both seem to assume *sub silentio* that the judicially created affirmative defense of official immunity continues to apply to statutory claims for medical negligence. *See, e.g.*, *Kemp v. McReynolds*, 621 S.W.3d 644, 655–57 (Mo. Ct. App. 2021). Section 538.210.1 did away with a "common law cause of action" for medical negligence and "replac[ed]" it with a "statutory cause of action." Official immunity is a creature of judge-made common law. *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 n.6 (Mo. banc 2019); *Southers*, 263 S.W.3d at 610. Missouri has a statute adopting English common law as a rule of decision. *See* Mo. Rev. Stat. § 1.010.1. But that statute now "expressly excludes . . . the common law of England as it relates to claims arising out of the rendering of or failure to render health care services by a health care provider, it being the intent of the general assembly to replace those claims with statutory causes of action." Mo. Rev. Stat. § 1.010.2. And the Supreme Court of Missouri has traced official immunity to an 1854 decision where it discussed "the historical origins of the doctrine from British common law." *Southers*, 263 S.W.3d at 610, n.7 (citing *Reed v. Conway*, 20 Mo. 22 (1854)). Given that the Missouri General Assembly "retains the authority to abrogate [the common law] in its statutes," *State v. Bouse*, 150 S.W.3d 326, 333 (Mo. Ct. App. 2004) (en banc), it is not entirely clear that official immunity remains a defense against statutory medical negligence claims. Nevertheless, because the parties assume official immunity applies, the Court will too. *See Chambers v. City of Fordyce*, 508 F.3d 878, 882 (8th Cir. 2007) (explaining that the court "generally do[es] not address issues not briefed"); *Niemi v. Lasshofer*, 728 F.3d 1252, 1259 (10th Cir. 2013) (Gorsuch, J.) (explaining courts "don't usually go looking for trouble but rely instead on the parties to identify the issues we must decide").

¶¶ 58–59. Defendant Heitman arrived in the cell and recorded Mitchell's symptoms but did not contact a doctor.[5] *Id.* ¶¶ 63–64. This Court concludes that Doucette's standing order was ministerial. The order described a set of words and required staff to contact a doctor immediately upon utterance of those words. *Id.* ¶ 60. Such an order left no room for discretion on the part of Heitman. Therefore, official immunity does not apply to Heitman's breach of that duty.

B. Paragraph 69 of the Complaint states that "Defendant Heitman failed to record [Decedent]'s blood pressure, even though that was required by Correction Medicine's policy and her standing orders." *Id.* ¶ 69. Additionally, Heitman "failed to send [Decedent] to the hospital or to the infirmary and . . . ignored doctor's orders by failing to contact the on-call provider to report the slurred speech, inability to talk, and difficulty walking." *Id.* ¶ 71. From these allegations alone, the Court cannot determine whether the Correction Medicine policy, standing orders, and doctor's orders were ministerial or not because the Complaint does not specify what those policies and orders said. The "[P]laintiff must plead facts establishing an exception to official immunity[,]" *State ex rel. Morales v. Alessi*, 679 S.W.3d 467, 471 (Mo. banc 2023) (quoting *Stephens*, 453 S.W.3d at 251), and under binding Eighth Circuit precedent, this Court cannot

[5] Plaintiff pleads this fact "upon information and belief." *Id.* ¶ 64. Under Eighth Circuit precedent, "allegations pled on information and belief are not categorically insufficient to state a claim for relief where the proof supporting the allegation is within the sole possession and control of the defendant or where the belief is based on sufficient factual material that makes the inference of culpability plausible." *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 954 (8th Cir. 2023). Therefore, this Court accepts all allegations pleaded on information and belief as true at this stage.

wait for "further factual development [to] definitively answer the inquiry" if there are not sufficient facts to determine official immunity on the pleadings. *Williams v. Mo. Dep't of Corr.*, 186 F.4th 503, 513 (8th Cir. 2026). Therefore, Heitman is entitled to official immunity on these facts.

C. Paragraphs 77–79 state that when Decedent contacted Defendant Reynolds at 7:15 a.m. on the 25th regarding his symptoms, Reynolds delayed sending him to the infirmary to make sure he "wasn't faking or malingering." Doc. [36] ¶¶ 77–79. Reynolds ultimately sent Decedent to the infirmary around 12:36 p.m. *Id.* ¶¶ 86–90. Thus, even if Reynolds's duty was ministerial, Plaintiff's allegation is not that she failed to perform it, but that she took too long to perform it. However, the ministerial exception only applies if the public employee failed to perform the ministerial duty, not if the employee was negligent in performing it. For example, in *McCoy v. Martinez*, the Missouri Court of Appeals ruled that a physical education teacher could not be held liable for negligence in performing a ministerial duty because the plaintiff "fail[ed] to mention the essential element that the 'ministerial conduct' was breached." 480 S.W.3d 420, 426 (Mo. Ct. App. 2016). As summarized by a later case, *McCoy* held that a complaint must "allege a *breach* of a ministerial duty . . . not merely performance of ministerial conduct causing an injury." *Kemp*, 621 S.W.3d at 655 (citing *McCoy*, 480 S.W.3d at 426). Similarly, assuming Reynolds's duty here was ministerial, she obeyed it; she sent Mitchell to the infirmary. Doc. [36]

¶ 88. Therefore, Reynolds's actions here cannot fall under the ministerial exception.[6]

D. Paragraphs 92–94 state that when Decedent arrived at the infirmary with symptoms of a stroke, Defendant Howard did not call 911, did not escalate Decedent's care, and did not take vital signs. Doc. [36] ¶¶ 92–94. However, Plaintiff does not allege that these failures were in violation of any specific, clerical duty on Howard's part. Indeed, determining whether a patient's symptoms are severe enough to warrant calling 911 necessarily involves discretion.[7] Therefore, the ministerial exception does not apply here.

E. Paragraphs 95–99 allege that Defendant Parker ordered Defendant Howard to conduct orthostatic BPs and either observe Decedent's fluid intake or administer an IV if Decedent could not drink enough. Doc. [36] ¶¶ 95–99. Howard did not conduct the tests until 1:16 p.m., and neither observed Decedent's fluid intake nor administered an IV. *Id.* The order to conduct orthostatic BPs suffers from the same flaw as the allegations in Paragraphs 77–79; namely, Howard ultimately followed the order. The fact that Howard took too long is irrelevant because Plaintiff does not allege any ministerial order that she breached. *See McCoy*, 480 S.W.3d at 426. By contrast, this Court concludes that Parker's

---

[6] Of course, a defendant's performance of a ministerial duty may be so unreasonable that it rises to the level of malice or bad faith, such that another exception to official immunity applies. The Court analyzes that argument later in this opinion.

[7] As cited by Plaintiff, *see* Doc. [112] at 6, the Eighth Circuit held in *Letterman v. Does*, 859 F.3d 1120, 1126 (8th Cir. 2017), that a jail policy requiring officers to report a lack of movement in cells was ministerial and not discretionary. Plaintiff claims that the policy in *Letterman* is analogous to this case; however, the policy in *Letterman* was far more specific and detailed than the policy alleged here. So, this Court finds *Letterman* distinguishable.

order for Howard to either observe Decedent's fluid intake or administer an IV was ministerial. Defendants may argue that Parker's order to Howard involved discretion because he gave Howard a choice of either observing Decedent's fluid intake or administering an IV. Doc. [36] ¶¶ 95–99. However, Missouri law allows courts to consider consequences in determining whether a duty is ministerial or not, and here it would be absurd to apply official immunity to a discretionary choice between two options when the Defendant ultimately chose neither of them. *Id.*; *Southers*, 263 S.W.3d at 610; *see also J.M. v. Ozark Horizon State Sch.*, 6:23-cv-3222-MDH, 2025 WL 1698509, at *4 (W.D. Mo. Jun. 17, 2025) (considering consequences in official immunity analysis). Therefore, the ministerial exception applies.

F. Paragraphs 105–109 allege that when Defendant Cora found Decedent unconscious, she did not initiate CPR and did not call 911 because the jail instructed nurses not to call 911 to avoid incurring emergency room costs. Doc. [36] ¶¶ 105–109. Here, too, Plaintiff does not allege a specific, clerical policy requiring Cora to initiate CPR upon a specific set of facts. Without such a policy, deciding whether a patient needs CPR necessarily involves discretion. Additionally, these allegations suffer from the same problems as *McCoy*, in that the harm to Decedent derived from Cora *following* a jail policy, and for the ministerial exception to apply, the Defendant must *breach* a policy. *McCoy*, 480 S.W.3d at 426.

G. Paragraph 114 alleges that Defendant Doucette did not perform functionality tests on the rebreather oxygen tanks and suction devices that malfunctioned.

Doc. [36] ¶ 114. However, once again, Plaintiff does not allege any clerical policy requiring said tests to be performed on a specific set of facts. Therefore, the ministerial exception does not apply.

H. Paragraph 117 alleges that, as Decedent was unconscious, jail staff did not perform mouth-to-mouth resuscitation or chest compressions, but as previously, Plaintiff does not allege any clerical policy requiring mouth-to-mouth resuscitation or chest compressions on a given set of facts. So, any duty here was not ministerial. Doc. [36] ¶ 117.

I. Finally, according to Paragraph 133, "Parker stat[ed] that if [Decedent] [was] having difficulties with ambulation, he might need to go to the hospital," but no one sent him to the hospital. *Id.* ¶ 133. Here, use of the word "might" establishes discretion and makes the ministerial exception inapplicable.

Plaintiff also cites a long litany of alleged acts in Paragraph 236, but these allegations are not specific to each defendant and largely summarize what Plaintiff alleged previously. *Id.* ¶ 236; *see C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, 4:20-cv-1444-MTS, 2021 WL 3725680, at *7 (E.D. Mo. Aug. 23, 2021) (granting motion to dismiss because "Plaintiffs lump basically all the Defendants together in each allegation").

Regarding the bad faith/malice exception, Plaintiff's brief mentions six examples of supposed bad faith or malice: (1) Defendant Reynolds deliberately delaying treatment to make sure that Decedent was not "malingering," (2) Defendant Heitman dismissing Decedent's symptoms and waiting for the morning nurse because she was angry about being woken up at 4:00 in the morning, (3) Defendant Cora not initiating CPR or calling 911 upon finding Decedent unconscious, (4) Defendant Heitman not recording Decedent's blood pressure, (5)

Defendant Heitman not reporting new stroke symptoms, and (6) Defendant Howard not recording vital signs at the infirmary. Doc. [113] at 8–9; Doc. [36] ¶¶ 66–73, 79, 94, 105–109, 117. However, the bad faith/malice exception usually requires "actual intent to cause injury," and none of these allegations, concerning as they may be, plausibly allege that Defendants wanted to harm Jo'von Mitchell. *State ex rel. Love*, 689 S.W.3d at 496 (quoting *State ex rel. Twiehaus*, 706 S.W.2d at 446).

With this official immunity analysis concluded, the Court finds that Plaintiff successfully overcomes official immunity as to Defendants Howard and Heitman, but not as to Defendants Reynolds, Cora, Parker, or Doucette.[8] Therefore, this Court finds that Counts IV and V should be dismissed on official immunity grounds as to Reynolds, Cora, Parker, and Doucette.

f. Failure to State a Claim

The Court now must determine whether Plaintiff states a claim under Missouri law against Defendants Howard and Heitman. He does.

In Missouri, any cause of action for "personal injury or death arising out of the rendering of or failure to render health care services" arises under Mo. Rev. Stat. § 538.210.1

[8] Plaintiff alleges that Doucette failed to supervise nurses under her and is vicariously liable for the actions of the nurses. Doc. [36] ¶ 235; Doc. [112] at 6, 8. As to the first allegation, Doucette's supervision of the nurses under her necessarily involves discretion, and there are no allegations to suggest that Doucette acted with bad faith or malice in her supervision of the nurses. *See State ex rel. Morales*, 679 S.W.3d at 472–73 (finding official immunity for medical staff who failed to monitor Decedent). As to the second allegation, Missouri law does not apply respondeat superior to public officers so long as "(1) [the] subordinates are themselves employees of the government; (2) if there is no negligence . . . in employing [the subordinates]; and (3) the superior officer has not directed or encouraged or ratified [the subordinate's] acts . . . ." *State ex rel. Hill v. Baldridge*, 186 S.W.3d 258, 259 (Mo. banc 2006). Here, all Defendants are employees of the government, *see* Doc. [36] ¶¶ 16–21, Plaintiff does not allege that Doucette was negligent in hiring any Defendant, and Plaintiff does not allege that Doucette directed or encouraged Defendant nurses' acts. In fact, many of the negligent acts committed by Defendants were in *violation* of Doucette's orders. *See* Doc. [36] ¶¶ 60–64, 66. Therefore, respondeat superior cannot apply here.

(2020).[9] The elements of a claim under § 538.210 are "that the health care provider failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by members of the defendant's profession and that such failure directly caused or contributed to cause the plaintiff's injury or death." *Id.* Under the notice-pleading standard of Federal Rule 8(a)(2), Plaintiff pleads sufficient facts as to both Defendants.

As to Defendant Heitman, the Third Amended Complaint alleges that Heitman violated her standing orders by refusing to call a doctor when Decedent reported the "worst headache of his life," and violated her orders because she was frustrated at being woken up at 4:00 in the morning. Doc. [36] ¶¶ 58–60, 68. Making all reasonable inferences in Plaintiff's favor, it is plausible that Heitman did not follow the standard of care in her profession, and that by not reporting Decedent's condition, she proximately caused his death.

As to Defendant Howard, the Third Amended Complaint alleges that Parker ordered Howard to either monitor Decedent's fluid intake or administer an IV, but Howard did neither. Doc. [36] ¶¶ 95–99. Once again, based on these facts, it is plausible that Howard breached the ordinary duty of care in her profession, and by doing so she proximately caused Decedent's death.

## IV. Conclusion

After carefully considering the briefs from all parties, this Court finds that Defendant Doucette's Motion to Dismiss, Doc. [109], should be granted due to the statute of limitations

---

[9] The Court notes that after the events of December 25, 2019 giving rise to this litigation, but before the filing of this lawsuit on December 25, 2022, the Missouri General Assembly amended § 538.210. *Compare* Mo. Rev. Stat. § 538.210 (2017) *with* Mo. Rev. Stat. § 538.210 (2020). According to Mo. Rev. Stat. § 510.262 (2020), the statutory changes to § 538.210 "apply to causes of action filed on or after August 28, 2020." Therefore, the Court applies the amended version of § 538.210; however, even the pre-amended version would not substantively change the Court's analysis.

and official immunity. Additionally, this Court finds that Defendants Cora, Heitman, Howard, Parker, and Reynolds's Motion to Dismiss, Doc. [107], should be granted as to Defendants Cora, Parker, and Reynolds on official immunity grounds, but denied as to Defendants Heitman and Howard. Moreover, since Counts III and VI have been dismissed entirely, *see* Docs. [82] and [119], only Heitman, Reynolds, and Howard remain on Count I, *see Mitchell*, 160 F.4th at 964 (reversing this Court's dismissal of Count I only as to Heitman, Reynolds, and Howard), and only St. Louis County remains on Count II, *see id.* (reversing this Court's dismissal of Count II as to St. Louis County alone), there are no Counts asserting claims against Doucette, Cora, or Parker. Therefore, those Defendants will be dismissed from this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Doucette's Motion to Dismiss Count IV, Doc. [109], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Cora, Heitman, Howard, Parker, and Reynolds's Motion to Dismiss Counts IV and V, Doc. [107], is **GRANTED** in part and **DENIED** in part, consistent with this Memorandum and Order.

**IT IS FINALLY ORDERED** that, with no Counts remaining as to Defendants Parker, Doucette, or Cora, those Defendants are **DISMISSED** from this action.

Dated this 17th day of November 2026.

MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE